# EXHIBIT "A"

THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

GRANDE OAKS AT HEATHROW ASSOCIATION, INC., a Florida Not-For-Profit Corporation,

Plaintiff,

v.

KOLTER SIGNATURE HOMES, LLC, a Florida Limited Liability Company; JOHN CSAPO; HEATHROW OAKS, LLC, a Foreign Limited Liability Company; A.F.I. CONSTRUCTION, INC., a Florida Profit Corporation; AFI CONSTRUCTION, INC., a Florida Profit Corporation; AMERICAN OUTDOOR LIVING, INC., a Florida Profit Corporation; ARCHITECTURAL STUDIO, INC., a Florida Profit Corporation; ARDAMAN & ASSOCIATES, INC., a Florida Profit Corporation; ASE ENGINEERING SERVICES, INC., a Florida Profit Corporation; BARFIELD FENCE AND FABRICATION, INC. f/k/a BARFIELD FENCE & WALL, INC., a Florida Profit Corporation; BUILDERS FIRSTSOURCE - FLORIDA, LLC, a Foreign Limited Liability Company; CEDRUS, INC. d/b/a AMERICAN STAIRS, a Florida Profit Corporation; CLEAR ENGINEERING, LLC, a Florida Limited Liability Company; CIRCLE L ROOFING, INC., a Florida Profit Corporation; CIRCLE L ROOFING, LLC, a Florida Limited Liability Company; CLASSIC FLOORS, INC., a Florida Profit Corporation; COLLAZO PAINTING, INC., a Florida Profit Corporation; COLLAZO PAINTING AND DRYWALL, INC., a Florida Profit Corporation; COLEMAN FLOOR COMPANY, a Foreign Profit Corporation; COLLIS ROOFING, INC., a Florida Profit Corporation; CONSTRUCTION SERVICES & CONSULTANTS, INC. a/k/a GOLDMARK HOLDINGS, INC., a Florida Profit Corporation; CONQUEST SERVICES, INC., a Florida Profit Corporation; CUNNINGHAM ELECTRIC, INC., a Florida Profit Corporation; DA PAU ENTERPRISES II, INC., a Florida Profit Corporation; DURATEK PRECAST

Case No.: **2020CA003188**

UNOFFICIAL



*** E-FILED: GRANT MALOY, CLERK OF CIRCUIT COURT SEMINOLE COUNTY, FL 12/29/2020 04:07:27 PM.****

STRUCTURES, LLC, a Florida Limited Liability Company; EAST COAST TRUSSES, LLC f/k/a MARTINEZ BUILDERS SUPPLY, LLC, a Florida Limited Liability Company; F & B STUCCO ASSOCIATES, INC., a Florida Profit Corporation; G & L EXTERIORS, INC., a Florida Profit Corporation; G.B. PAINTING, INC., a Florida Profit Corporation; G.H.B. CONTRACTORS, INC., a Florida Profit Corporation; GULF WESTERN ROOFING & SHEET METAL, INC., a Florida Profit Corporation; GULF WESTERN ROOFING & SHEET METAL, LLC n/k/a GWR CENTRAL, LLC, a Florida Limited Liability Company; HALL BROTHERS ROOFING, INC., a Florida Profit Corporation; INNOVATIVE OUTDOORS, INC., a Florida Profit Corporation; ITALIAN TERRAZZO AND TILE CO. OF BREVARD, L.L.C., a Florida Limited Liability Company; JADE HOME DÉCOR, INC., a Florida Profit Corporation; JANUS BUILDING COMPANY, LLC d/b/a JANUS BUILDING COMPANY OF FLORIDA, a Florida Limited Liability Company; JMHC, INC., a Florida Profit Corporation; JOHN KEENAN PAINTING, LLC, a Florida Limited Liability Company; JUST FLOORS, INC., a Florida Profit Corporation; KIMLEY-HORN AND ASSOCIATES, INC., a Foreign Profit Corporation; MICHAEL KING PAINTING, INC., a Florida Profit Corporation; MINSHENG XIE; OLDCASTLE PRECAST, INC. n/k/a OLDCASTLE INFRASTRUCTURE, INC., a Foreign Profit Corporation; OMNI AWNINGS, INC., a Florida Profit Corporation; PETERSENDEAN ROOFING AND SOLAR SYSTEMS, INC., a Florida Profit Corporation; PINNACLE PAVERS, LLC, a Florida Limited Liability Company; PROFESSIONAL SUNSHINE ROOFING, INC., a Florida Profit Corporation; R & W ENDEAVORS, INC., a Florida Profit Corporation; REW LANDSCAPE CORP., a Florida Profit Corporation; RICHARD & RICE CONSTRUCTION COMPANY, INC., a Florida Profit Corporation; ROOF TILE SPECIALISTS, LLC, a Florida Limited Liability Company; RUBIO'S D PAINTING, INC., a Florida Profit Corporation; RUBIO PROFESSIONAL PAINTING, INC., a Florida Profit Corporation; RUSSO AND SONS, INC. n/k/a M&MR

UNOFFICIAL

OPERATIONS, INC., a Florida Profit Corporation; SCOTT BLAKESLEE DISHER; SEMINOLE MASONRY, LLC, a Foreign Limited Liability Company; SOLAR-TITE, INC., a Florida Profit Corporation; STOCK BUILDING SUPPLY, INC., a Foreign Profit Corporation; STONE AGE PAVERS, INC., a Florida Profit Corporation; SUPERIOR SITE SERVICES, INC., a Florida Profit Corporation; TRADEWINDS GROUP OF CENTRAL FL, INC. d/b/a GB PAINTING, a Florida Profit Corporation; TRUSSWAY, LTD., a Foreign Limited Partnership; TYTON CONSTRUCTION, INC., a Florida Profit Corporation; UNITED CONTRACTORS BUILDING CORPORATION, a Florida Profit Corporation; WALKER BUILDING CORPORATION, a Florida Profit Corporation; YORK BRIDGE CONCEPTS, INC., a Florida Profit Corporation,

Defendants.

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC. (the "Association"), by and through its undersigned counsel, hereby brings suit against Defendants, KOLTER SIGNATURE HOMES, LLC ("KOLTER"); JOHN CSAPO; HEATHROW OAKS, LLC ("DEVELOPER"); A.F.I CONSTRUCTION, INC. ("A.F.I. CONSTRUCTION"); AFI CONSTRUCTION, INC. ("AFI CONSTRUCTION"); AMERICAN OUTDOOR LIVING, INC. ("AMERICAN OUTDOOR"); ARCHITECTURAL STUDIO, INC. ("ARCHITECTURAL STUDIO"); ARDAMAN & ASSOCIATES, INC. ("ARDAMAN"); ASE ENGINEERING SERVICES, INC.("ASE ENGINEERING"); BARFIELD FENCE AND FABRICATION, INC. F/K/A BARFIELD FENCE & WALL, INC. ("BARFIELD"); BUILDERS FIRSTSOURCE - FLORIDA, LLC ("BUILDERS FIRSTSOURCE"); CEDRUS, INC. D/B/A AMERICAN STAIRS ("AMERICAN STAIRS"); CLEAR ENGINEERING, LLC ("CLEAR ENGINEERING");

UNOFFICIAL

CIRCLE L ROOFING, INC. (“CIRCLE L, INC.”); CIRCLE L ROOFING, LLC (“CIRCLE L, LLC”); CLASSIC FLOORS, INC. (“CLASSIC FLOORS”); COLLAZO PAINTING, INC. (“COLLAZO PAINTING”); COLLAZO PAINTING AND DRYWALL, INC. (“COLLAZO DRYWALL”); COLEMAN FLOOR COMPANY (“COLEMAN FLOOR”); COLLIS ROOFING, INC. (“COLLIS ROOFING”); CONSTRUCTION SERVICES & CONSULTANTS, INC. A/K/A GOLDMARK HOLDINGS, INC. (“CSCI”); CONQUEST SERVICES, INC. (“CONQUEST SERVICES”); CUNNINGHAM ELECTRIC, INC.(“CUNNINGHAM ELECTRIC”); DA PAU ENTERPRISES II, INC. (“DA PAU”); DURATEK PRECAST STRUCTURES, LLC (“DURATEK PRECAST”); EAST COAST TRUSSES, LLC F/K/A MARTINEZ BUILDERS SUPPLY, LLC (“EAST COAST TRUSSES”); F & B STUCCO ASSOCIATES, INC. (“F & B STUCCO”); G & L EXTERIORS, INC. (“G & L EXTERIORS”); G.H.B. CONTRACTORS, INC. (“G.H.B. CONTRACTORS”); GULF WESTERN ROOFING & SHEET METAL, INC. (“GULF WESTERN, INC.”); GULF WESTERN ROOFING & SHEET METAL, LLC N/K/A GWR CENTRAL, LLC (“GULF WESTERN, LLC”); HALL BROTHERS ROOFING, INC. (“HALL BROTHERS”); INNOVATIVE OUTDOORS, INC. (“INNOVATIVE OUTDOORS”); ITALIAN TERRAZZO AND TILE CO. OF BREVARD, LLC (“ITALIAN TERRAZZO”); JADE HOME DÉCOR, INC. (“JADE HOME”); JANUS BUILDING COMPANY, LLC D/B/A JANUS BUILDING COMPANY OF FLORIDA (“JANUS BUILDING”); JMHC, INC. (“JMHC”); JOHN KEENAN PAINTING, LLC (“JOHN KEENAN”); JUST FLOORS, INC. (“JUST FLOORS”); KIMLEY-HORN AND ASSOCIATES, INC. (“KIMLEY-HORN”); MICHAEL KING PAINTING, INC. (“MICHAEL KING”); MINSHENG XIE; OLDCASTLE PRECAST, INC. N/K/A OLDCASTLE INFRASTRUCTURE, INC. (“OLDCASTLE”); OMNI AWNINGS, INC. (“OMNI AWNINGS”); PETERSENDEAN

UNOFFICIAL

ROOFING AND SOLAR SYSTEMS, INC. ("PETERSENDEAN"); PINNACLE PAVERS, LLC ("PINNACLE PAVERS"); PROFESSIONAL SUNSHINE ROOFING, INC. ("SUNSHINE ROOFING"); R & W ENDEAVORS, INC. ("R & W ENDEAVORS"); REW LANDSCAPE CORP. ("REW LANDSCAPE"); RICHARD & RICE CONSTRUCTION COMPANY, INC. ("RICHARD & RICE"); ROOF TILE SPECIALISTS, LLC ("ROOF TILE"); RUBIO'S D PAINTING, INC. ("RUBIO'S D"); RUBIO PROFESSIONAL PAINTING, INC. ("RUBIO PAINTING"); RUSSO AND SONS, INC. N/K/A M&MR OPERATIONS, INC. ("M&MR OPERATIONS"); SCOTT BLAKESLEE DISHER; SEMINOLE MASONRY, LLC ("SEMINOLE MASONTRY"); SOLAR-TITE, INC. ("SOLAR-TITE"); STOCK BUILDING SUPPLY, INC. ("BUILDING SUPPLY"); STONE AGE PAVERS, INC. ("STONE AGE"); SUPERIOR SITE SERVICES, INC. ("SUPERIOR SITE SERVICES"); TRADEWINDS GROUP OF CENTRAL FL, INC. D/B/A G.B. PAINTING ("G.B. PAINTING"); TRUSSWAY, LTD. ("TRUSSWAY"); TYTON CONSTRUCTION, INC. ("TYTON CONSTRUCTION"); UNITED CONTRACTORS BUILDING CORPORATION ("UNITED CONTRACTORS"); WALKER BUILDING CORPORATION ("WALKER BUILDING"); YORK BRIDGE CONCEPTS, INC. ("YORK BRIDGE"), and seeks trial by jury. In support thereof, the Association alleges as follows:

UNOFFICIAL

## BACKGROUND OF THE CASE

1. This is an action for damages arising from the defective construction and sale of the individual units and common areas of the Grande Oaks at Heathrow residential community located in Lake Mary, Seminole County, Florida (the "Townhomes" or "Subject Property") caused by the parties responsible for the development, design, and construction of the Townhomes.

2. The Association alleges claims for breach of Florida Building Code, breach of implied warranty, deceptive and unfair trade practices, negligence, and professional negligence.

## JURISDICTION AND VENUE

3. This is an action for monetary damages in excess of $30,000.00, exclusive of interest, costs, and attorney's fees, and this Court otherwise has jurisdiction over the subject matter hereof.

4. The Subject Property of this action is located within Seminole County, Florida.

5. The Association has an office for the transaction of its usual and customary business located within Seminole County, Florida.

6. At all times material, Defendants conducted business or resided in Seminole County, Florida, including for the construction of the Subject Property.

7. The acts or omissions giving rise to this Complaint took place in Seminole County, Florida, and each cause of action occurred in Seminole County, Florida. Therefore, jurisdiction and venue are proper in this county. Further, this action is properly filed in Seminole County, Florida under Chapter 47, Florida Statutes, because the cause of action sued upon herein accrued in Seminole County, Florida.

8. All conditions precedent to bringing this action have occurred or have been waived, including without limitation the requirements prescribed under Chapter 558, Florida Statutes.

## PARTIES

9. The Association is a Florida not-for-profit corporation organized and existing pursuant to Chapter 720, Florida Statutes, to provide a corporate entity, pursuant to § 720.302, Florida Statutes, for the operation of the Grande Oaks at Heathrow community.

UNOFFICIAL

10. In total, the Subject Property, which is located in Seminole County, Florida, consists of 52 two and three-story residential buildings containing 314 units and associated common areas, including roadways, sidewalks, fencing, a bridge, and a pond.

11. The Association brings this action in its own right and as a lawful representative for its members who own the Townhomes that Defendants designed, built, and sold, and which suffer from defects and damages affecting the exterior walls, window penetrations, roofing systems, drywall, stucco, paint, sheathing, framing, lath, and other common elements affecting the Association and its members as a matter of common interest.

12. Pursuant to §720.303(1), Florida Statutes, and Rule 1.221, Florida Rules of Civil Procedure, the Association is the lawful, adequate, and appropriate class representative of the Townhomes' owners and all common areas, improvements, and appurtenances incident thereto.

13. KOLTER is a Florida limited liability company with its principal place of business located in Delray Beach, Florida.

14. KOLTER served as the builder and licensed "general contractor," as that term is defined in § 489.105(3)(a), Florida Statutes, for the construction of the Townhomes.

15. As the General Contractor for the Subject Property, KOLTER was responsible for the development, design, and construction of the Subject Property, including without limitation retaining, hiring, supervising, directing, and coordinating the work of its subcontractors, including the SUBCONTRACTORS (defined below).

16. As the Townhomes' General Contractor, KOLTER owed a statutory duty to the Association and its members, pursuant to the applicable building codes and § 553.84, Florida Statutes, to perform its scope of work in compliance with the applicable building codes, and a common-law duty to construct the Subject Property in accordance with the applicable plans and

UNOFFICIAL

specifications, manufacturers' guidelines, and standard industry practices, so as to prevent harm and damage to the Association and its members.

17. As the General Contractor, KOLTER also had a non-delegable duty to ensure construction of the Townhomes complied with the building code. *See Mastrandrea v. J. Mann, Inc.*, 128 So.2d 146 (Fla. 3d DCA 1961); *Bialkowicz v. Pan Am. Condominium No. 3, Inc.*, 215 So.2d 767 (Fla. 3d DCA 1968).

18. JOHN CSAPO is a citizen of Florida and is a licensed Certified General Contractor in the state of Florida.

19. JOHN CSAPO served as the qualifying agent for KOLTER and the Certified General Contractor, as those terms are defined in § 489.105(3)(b) and § 489.105(4), Fla. Stat., and was responsible for the construction of the Subject Property, including without limitation supervising, directing, and coordinating the PROFESSIONAL CONSULTANTS and SUBCONTRACTORS (both definitions defined below).

20. JOHN CSAPO owed a statutory duty to the Association, pursuant to the applicable building codes, and a common-law duty to construct the Subject Property in accordance with standard industry practices so as to prevent harm and damage to the Association and its members.

21. As the Certified General Contractor, JOHN CSAPO also had a non-delegable duty to ensure construction of the Townhomes complied with the building code. *See Mastrandrea v. J. Mann, Inc.*, 128 So.2d 146 (Fla. 3d DCA 1961); *Bialkowicz v. Pan Am. Condominium No. 3, Inc.*, 215 So.2d 767 (Fla. 3d DCA 1968).

22. DEVELOPER is a foreign limited liability company with its principal place of business located in Delray Beach, Florida.

23. DEVELOPER served as the developer of the Townhomes.

UNOFFICIAL

24. As the developer for the Subject Property, DEVELOPER was responsible for the development, design, and construction of the Subject Property, including without limitation retaining, hiring, supervising, directing, and coordinating KOLTER and the PROFESSIONAL CONSULTANTS (defined below).

25. As the Townhomes' developer, DEVELOPER owed a statutory duty to the Association and its members, pursuant to the applicable building codes and § 553.84, Florida Statutes, and a common-law duty to construct the Subject Property in accordance with the applicable plans and specifications, manufacturers' guidelines, and standard industry practices, so as to prevent harm and damage to the Association and its members.

26. KOLTER and DEVELOPER are related entities both owned and controlled by The Kolter Group, LLC.

27. KOLTER and DEVELOPER worked together serving as conduits for each other, forming a joint enterprise or joint venture between the related entities to develop, construct, market, and sell the townhomes to the public, including to the Association's members.

28. At all times material hereto, ARCHITECTURAL STUDIO was conducting business in Seminole County, FL, including for the Subject Property's design and construction.

29. ARCHITECTURAL STUDIO served as the architect of the Townhomes, provided professional architectural services for the Townhomes, and was responsible for designing, inspecting, and approving the Townhomes' design and construction.

30. Throughout the design, construction, inspection, and approval of the Townhomes, ARCHITECTURAL STUDIO was under a professional duty to the Association and its members to use reasonable care and to ensure the design and construction of the Subject Property complied with all applicable building codes and applicable design and construction standards.



UNOFFICIAL

31. SCOTT BLAKESLEE DISHER is a citizen of Florida, a licensed architect, and served as the architect of record for the Townhomes on behalf of ARCHITECTURAL STUDIO and signed and sealed the plans and specifications for the Townhomes.

32. Throughout the design, inspection, and approval of the Townhomes, SCOTT BLAKESLEE DISHER was under a professional duty to the Association and its members to use reasonable care and to ensure the design and construction of Townhomes complied with all applicable building codes and applicable design and construction standards.

33. At all times material hereto, ARDAMAN was conducting business in Seminole County, FL, including for the Subject Property's design and construction.

34. ARDAMAN served as the geo-technical engineer and surveyor of the Townhomes, provided professional engineering services for the Townhomes, and was responsible for designing, inspecting, and approving the Townhomes' design and construction.

35. Throughout the design, construction, inspection, and approval of the Townhomes, ARDAMAN was under a professional duty to the Association and its members to use reasonable care and to ensure the design and construction of the Subject Property complied with all applicable building codes and applicable design and construction standards.

36. At all times material hereto, ASE ENGINEERING was conducting business in Seminole County, FL, including for the Subject Property's design and construction.

37. ASE ENGINEERING served as the engineer of the Townhomes, provided professional engineering services for the Townhomes, and was responsible for designing, inspecting, and approving the Townhomes' design and construction.

38. Throughout the design, construction, inspection, and approval of the Townhomes, ASE ENGINEERING was under a professional duty to the Association and its members to use

UNOFFICIAL

reasonable care and to ensure the design and construction of the Subject Property complied with all applicable building codes and applicable design and construction standards.

39. MINSHENG XIE is a citizen of Florida, a licensed engineer, and served as the engineer of record for the Townhomes on behalf of ASE ENGINEERING and signed and sealed the plans and specifications for the Townhomes.

40. Throughout the design, inspection, and approval of the Townhomes, MINSHENG XIE was under a professional duty to the Association and its members to use reasonable care and to ensure the design and construction of Townhomes complied with all applicable building codes and applicable design and construction standards.

41. At all times material hereto, CLEAR ENGINEERING was conducting business in Seminole County, FL, including for the Subject Property's design and construction.

42. CLEAR ENGINEERING served as the engineer of the Townhomes, provided professional engineering services for the Townhomes, and was responsible for designing, inspecting, and approving the Townhomes' design and construction.

43. Throughout the design, construction, inspection, and approval of the Townhomes, CLEAR ENGINEERING was under a professional duty to the Association and its members to use reasonable care and to ensure the design and construction of the Subject Property complied with all applicable building codes and applicable design and construction standards.

44. At all times material hereto, KIMLEY-HORN was conducting business in Seminole County, FL, including for the Subject Property's design and construction.

45. KIMLEY-HORN served as the civil engineer of the Townhomes, provided professional engineering services for the Townhomes, and was responsible for designing, inspecting, and approving the Townhomes' design and construction.

UNOFFICIAL

46. Throughout the design, construction, inspection, and approval of the Townhomes, KIMLEY-HORN was under a professional duty to the Association and its members to use reasonable care and to ensure the design and construction of the Subject Property complied with all applicable building codes and applicable design and construction standards.

47. At all times material hereto, A.F.I. CONSTRUCTION was conducting business in Seminole County, FL, including for the Subject Property.

48. A.F.I. CONSTRUCTION served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing stucco.

49. A.F.I. CONSTRUCTION owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

50. At all times material hereto, AFI CONSTRUCTION was conducting business in Seminole County, FL, including for the Subject Property.

51. AFI CONSTRUCTION served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing stucco.

52. AFI CONSTRUCTION owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

53. At all times material hereto, AMERICAN OUTDOOR was conducting business in Seminole County, FL, including for the Subject Property.

54. AMERICAN OUTDOOR served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing pavers.

55. AMERICAN OUTDOOR owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

56. At all times material hereto, AMERICAN STAIRS was conducting business in Seminole County, FL, including for the Subject Property.

57. AMERICAN STAIRS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing metal railings.

58. AMERICAN STAIRS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

59. At all times material hereto, BARFIELD was conducting business in Seminole County, FL, including for the Subject Property.

60. BARFIELD served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing balcony railings.

UNOFFICIAL

61. BARFIELD owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

62. At all times material hereto, BUILDERS FIRSTSOURCE was conducting business in Seminole County, FL, including for the Subject Property.

63. BUILDERS FIRSTSOURCE served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing windows and window flashings.

64. BUILDERS FIRSTSOURCE owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

65. At all times material hereto, BUILDING SUPPLY was conducting business in Seminole County, FL, including for the Subject Property.

66. BUILDING SUPPLY served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing windows and window flashings.

67. BUILDING SUPPLY owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

68. At all times material hereto, CIRCLE L, INC. was conducting business in Seminole County, FL, including for the Subject Property.

69. CIRCLE L, INC. served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing roofing systems.

70. CIRCLE L, INC. owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

71. At all times material hereto, CIRCLE L, LLC was conducting business in Seminole County, FL, including for the Subject Property.

72. CIRCLE L, LLC served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing roofing systems.

73. CIRCLE L, LLC owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

74. At all times material hereto, CLASSIC FLOORS was conducting business in Seminole County, FL, including for the Subject Property.

75. CLASSIC FLOORS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing balcony decking.

UNOFFICIAL

76. CLASSIC FLOORS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

77. At all times material hereto, COLLAZO PAINTING was conducting business in Seminole County, FL, including for the Subject Property.

78. COLLAZO PAINTING served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing exterior paint and sealants.

79. COLLAZO PAINTING owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

80. At all times material hereto, COLLAZO DRYWALL was conducting business in Seminole County, FL, including for the Subject Property.

81. COLLAZO DRYWALL served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing exterior paint and sealants.

82. COLLAZO DRYWALL owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

83. At all times material hereto, COLEMAN FLOOR was conducting business in Seminole County, FL, including for the Subject Property.

84. COLEMAN FLOOR served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing balcony decking.

85. COLEMAN FLOOR owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

86. At all times material hereto, COLLIS ROOFING was conducting business in Seminole County, FL, including for the Subject Property.

87. COLLIS ROOFING served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing roofing systems.

88. COLLIS ROOFING owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

89. At all times material hereto, CSCI was conducting business in Seminole County, FL, including for the Subject Property.

90. CSCI served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing framing and zip wall sheathing, taping and flashings.

UNOFFICIAL

91. CSCI owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

92. At all times material hereto, CONQUEST SERVICES was conducting business in Seminole County, FL, including for the Subject Property.

93. CONQUEST SERVICES served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing balcony decking, balcony waterproofing and flashings, and roofing systems.

94. CONQUEST SERVICES owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

95. At all times material hereto, CUNNINGHAM ELECTRIC was conducting business in Seminole County, FL, including for the Subject Property.

96. CUNNINGHAM ELECTRIC served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation providing and/or installing electrical components and penetrations.

97. CUNNINGHAM ELECTRIC owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

98. At all times material hereto, DA PAU was conducting business in Seminole County, FL, including for the Subject Property.

99. DA PAU served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing stucco.

100. DA PAU owed a common-law duty to the Association and its members to use reasonable care to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

101. At all times material hereto, DURATEK PRECAST was conducting business in Seminole County, FL, including for the Subject Property.

102. DURATEK PRECAST served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation installing framing.

103. DURATEK PRECAST owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

104. At all times material hereto, EAST COAST TRUSSES was conducting business in Seminole County, FL, including for the Subject Property.

105. EAST COAST TRUSSES served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing framing, balcony framing, and trusses.

UNOFFICIAL

106. EAST COAST TRUSSES owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

107. At all times material hereto, F & B STUCO was conducting business in Seminole County, FL, including for the Subject Property.

108. F & B STUCCO served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnished and installed stucco.

109. F & B STUCCO owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

110. At all times material hereto, G & L EXTERIORS was conducting business in Seminole County, FL, including for the Subject Property.

111. G & L EXTERIORS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing stucco.

112. G & L EXTERIORS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

113. At all times material hereto, G.B. PAINTING was conducting business in Seminole County, FL, including for the Subject Property.

114. G.B. PAINTING served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing paint and sealants.

115. G.B. PAINTING owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

116. At all times material hereto, G.H.B. CONTRACTORS was conducting business in Seminole County, FL, including for the Subject Property.

117. G.H.B. CONTRACTORS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing gutters and roof flashings.

118. G.H.B. CONTRACTORS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

119. At all times material hereto, GULF WESTERN, INC. was conducting business in Seminole County, FL, including for the Subject Property.

120. GULF WESTERN, INC. served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing roofing and balcony waterproofing systems.

UNOFFICIAL

121. GULF WESTERN, INC. owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

122. At all times material hereto, GULF WESTERN, LLC was conducting business in Seminole County, FL, including for the Subject Property.

123. GULF WESTERN, LLC served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing roofing and balcony waterproofing systems.

124. GULF WESTERN, LLC owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

125. At all times material hereto, HALL BROTHERS was conducting business in Seminole County, FL, including for the Subject Property.

126. HALL BROTHERS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation installing roofing systems.

127. HALL BROTHERS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

128. At all times material hereto, INNOVATIVE OUTDOORS was conducting business in Seminole County, FL, including for the Subject Property.

129. INNOVATIVE OUTDOORS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation providing sitework, and grading services for drainage.

130. INNOVATIVE OUTDOORS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

131. At all times material hereto, ITALIAN TERRAZZO was conducting business in Seminole County, FL, including for the Subject Property.

132. ITALIAN TERRAZZO served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing pavers, drives and sidewalks.

133. ITALIAN TERRAZZO owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

134. At all times material hereto, JADE HOME was conducting business in Seminole County, FL, including for the Subject Property.

135. JADE HOME served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing exterior paint and sealants.

UNOFFICIAL

136. JADE HOME owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

137. At all times material hereto, JANUS BUILDING was conducting business in Seminole County, FL, including for the Subject Property.

138. JANUS BUILDING served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing balcony railings.

139. JANUS BUILDING owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

140. At all times material hereto, JMHC was conducting business in Seminole County, FL, including for the Subject Property.

141. JHMC served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation providing sitework services related to the community drainage and pond.

142. JHMC owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

143. At all times material hereto, JOHN KEENAN was conducting business in Seminole County, FL, including for the Subject Property.

144. JOHN KEENAN served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing exterior paint and sealants.

145. JOHN KEENAN owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

146. At all times material hereto, JUST FLOORS was conducting business in Seminole County, FL, including for the Subject Property.

147. JUST FLOORS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing balcony decking and balcony waterproofing systems.

148. JUST FLOORS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

149. At all times material hereto, M&MR OPERATIONS was conducting business in Seminole County, FL, including for the Subject Property.

150. M&MR OPERATIONS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation providing grading services for drainage.

UNOFFICIAL

151. M&MR OPERATIONS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

152. At all times material hereto, MICHAEL KING was conducting business in Seminole County, FL, including for the Subject Property.

153. MICHAEL KING served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing exterior paint and sealants.

154. MICHAEL KING owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

155. At all times material hereto, OLDCASTLE was conducting business in Seminole County, FL, including for the Subject Property.

156. OLDCASTLE served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation installing framing.

157. OLDCASTLE owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

158. At all times material hereto, OMNI AWNINGS was conducting business in Seminole County, FL, including for the Subject Property.

159. OMNI AWNINGS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing exterior penetrations in stucco, including, awnings.

160. OMNI AWNINGS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

161. At all times material hereto, PETERSENDEAN was conducting business in Seminole County, FL, including for the Subject Property.

162. PETERSENDEAN served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing roofing systems.

163. PETERSENDEAN owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

164. At all times material hereto, PINNACLE PAVERS was conducting business in Seminole County, FL, including for the Subject Property.

165. PINNACLE PAVERS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing pavers.

UNOFFICIAL

166. PINNACLE PAVERS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

167. At all times material hereto, R & W ENDEAVORS was conducting business in Seminole County, FL, including for the Subject Property.

168. R & W ENDEAVORS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing pavers.

169. R & W ENDEAVORS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

170. At all times material hereto, REW LANDSCAPE was conducting business in Seminole County, FL, including for the Subject Property.

171. REW LANDSCAPE served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation providing and/or installing drainage and irrigation systems.

172. REW LANDSCAPE owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

173. At all times material hereto, RICHARD & RICE was conducting business in Seminole County, FL, including for the Subject Property.

174. RICHARD & RICE served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing framing, and zip sheathing systems.

175. RICHARD & RICE owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

176. At all times material hereto, ROOF TILE was conducting business in Seminole County, FL, including for the Subject Property.

177. ROOF TILE served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing roofing systems.

178. ROOF TILE owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

179. At all times material hereto, RUBIO'S D was conducting business in Seminole County, FL, including for the Subject Property.

180. RUBIO'S D served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing exterior paint and sealants.

UNOFFICIAL

181. RUBIO'S D owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

182. At all times material hereto, RUBIO PAINTING was conducting business in Seminole County, FL, including for the Subject Property.

183. RUBIO PAINTING served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing exterior paint and sealants.

184. RUBIO PAINTING owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

185. At all times material hereto, SEMINOLE MASONRY was conducting business in Seminole County, FL, including for the Subject Property.

186. SEMINOLE MASONRY served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation installing perimeter walls and fencing.

187. SEMINOLE MASONRY owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

188. At all times material hereto, SOLAR-TITE was conducting business in Seminole County, FL, including for the Subject Property.

189. SOLAR-TITE served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing windows and window flashings.

190. SOLAR-TITE owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

191. At all times material hereto, STONE AGE was conducting business in Seminole County, FL, including for the Subject Property.

192. STONE AGE served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing pavers.

193. STONE AGE owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

194. At all times material hereto, SUNSHINE ROOFING was conducting business in Seminole County, FL, including for the Subject Property.

195. SUNSHINE ROOFING served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing roofing and balcony waterproofing systems.

UNOFFICIAL

196. SUNSHINE ROOFING owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

197. At all times material hereto, SUPERIOR SITE SERVICES was conducting business in Seminole County, FL, including for the Subject Property.

198. SUPERIOR SITE SERVICES served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation providing and/or installing grading services for drainage.

199. SUPERIOR SITE SERVICES owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

200. At all times material hereto, TRUSSWAY was conducting business in Seminole County, FL, including for the Subject Property.

201. TRUSSWAY served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing framing, trusses, including for balconies.

202. TRUSSWAY owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

UNOFFICIAL

203. At all times material hereto, TYTON CONSTRUCTION was conducting business in Seminole County, FL, including for the Subject Property.

204. TYTON CONSTRUCTION served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation providing grading services for drainage.

205. TYTON CONSTRUCTION owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

206. At all times material hereto, UNITED CONTRACTORS was conducting business in Seminole County, FL, including for the Subject Property.

207. UNITED CONTRACTORS served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing framing, and zip sheathing systems.

208. UNITED CONTRACTORS owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

209. At all times material hereto, WALKER BUILDING was conducting business in Seminole County, FL, including for the Subject Property.

210. WALKER BUILDING served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing fencing and balcony railings.

UNOFFICIAL

211. WALKER BUILDING owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

212. At all times material hereto, YORK BRIDGE was conducting business in Seminole County, FL, including for the Subject Property.

213. YORK BRIDGE served as a subcontractor to KOLTER for the construction of the Subject Property, and thus had responsibility for its entire scope of work, including without limitation furnishing and installing the pedestrian bridge at the community pond.

214. YORK BRIDGE owed a common-law duty to the Association and its members to use reasonable care; to perform its scope of work with due care so as not to cause harm; and to follow all applicable building codes, industry standards, and the Subject Property's permitted plans and specifications.

215. ARCHITECTURAL STUDIO; ARDAMAN; ASE ENGINEERING; CLEAR ENGINEERING; KIMLEY-HORN; MINSHENG XIE; and SCOTT BLAKESLEE DISHER shall be referred to collectively as "PROFESSIONAL CONSULTANTS."

216. The Defendants identified in Paragraphs 46 through 223 shall be referred to collectively as "SUBCONTRACTORS."

217. As a result of Defendants' conduct, the Association has been required to retain the services of the undersigned counsel to represent its interests in this action and is obligated to pay a reasonable fee for their services.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

UNOFFICIAL

218. The Association's members are collectively the fee-simple owners of the units, common areas, and the Subject Property.

219. The Association has the responsibility or right to maintain the common areas and exteriors of the Townhomes, including without limitation the building exteriors and roofs.

220. The Association also has the duty to maintain the Subject Property by making all proper expenditures, where possible, for the Subject Property's upkeep and management.

221. Upon information and belief, DEVELOPER controlled the Association until legal turnover of the Association to the unit owners.

222. The causes of action alleged herein concern matters of common interest to the Townhomes and the Association's members.

223. Defendants collectively undertook to plan, design, develop, construct, mass produce, and/or market the Townhomes for sale to, and use of, the general public, including the Association, its members, and their predecessors in interest.

224. In so doing, Defendants failed to plan, design, develop, or construct the Townhomes reasonably and adequately.

225. As a direct result of the collective and individual failures on the part of Defendants, the Association and its members have suffered and continue to suffer damages proximately defects and deficiencies in the construction of the Townhomes and amenity center, including without limitation the following defects and deficiencies caused by improper construction or design:

a) **Stucco and weather resistive barriers:** Defective, improper and inadequate installation of stucco in violation of the Florida Building Code, ASTM C1063, and ATSM C926; water intrusion; excessive cracking on building exteriors; inadequate number of stucco coats; improper thickness of stucco coats; improper and/or inadequate embedment; improperly

UNOFFICIAL

installed or missing control joints; improperly installed lath; undersized lath fasteners; improperly spaced lath fasteners; improperly installed building paper; improperly installed or lack of weep screeds; lack of separation between stucco and dissimilar materials, including at exterior wall penetrations and windows; lack of casing beads along the jambs of the windows and exterior wall penetration flashings; improperly installed decorative banding; improperly installed and missing stucco accessories; improper laps of weather resistive barrier; improper lath laps; improper taping of weather resistive barrier; improper termination of weather resistive barrier; improper integration of weather resistive barrier and weep screeds; improper integration of weather resistive barrier and roof diverters and roof to wall intersection and facias; improper integration of weather resistive barrier and flashing with penetrating elements such as plumbing, HVAC, and mechanical, and electrical penetrations; reverse lap of weather resistive barrier at windows.

b) **Exterior paint, caulk and sealants:** Defective and improper installation of paint, caulk, and sealants, including without limitation: improper paint materials not in compliance with the plans and specifications; improper, inadequate or missing exterior caulking and sealants, including failed or missing caulk at intersections of stucco and windows, sliding glass doors, stucco bands, control joints, stucco stops, balcony railings, balcony flashings, roof flashings, and penetrating elements, including electrical panels, HVAC, and plumbing penetrations; and lack of proper application of sealant between stucco and dissimilar materials.

c) **Framing, zip sheathing, and shear walls:** Defective, improper, and inadequate installation of structural framing, zip sheathing, and shear walls, including without limitation: improper and inadequate nailing of sheathing and framing; inadequate spacing

UNOFFICIAL

between sheathing panels, improper reinforcing, connections; member sizing of all structures; improper and inadequate balcony faming slope; improper, incomplete, and missing zip tape and flashings; installation of sheathing in improper orientation; improper or missing shear transfer mechanisms; improper or missing installation of tiedowns/hurricane straps; improper integration of weather resistive barrier at confined rakes, balconies, and flashing penetrations.

d) **Window installation and flashings:** Defective, improper and inadequate installation of windows, including without limitation: improper and inadequate flashing and installation of windows; leaking and failed window assemblies; flashing not fully adhered; improperly installed flashing; windows not installed in accordance with the plans and specifications; missing sealants; improper window taping; missing or improperly installed through wall head flashing; missing or improperly installed window sill and corner flashings; and improper window fasteners.

e) **Roofs**: Defective, improper, and inadequate installation of the roof systems, including without limitation: roof tiles; nailing of roof tiles; roof underlayment; voids in the roofing cement; height of plumbing vent stacks; roof flashing; eve flashing; roof covering; improper and inadequate roof drainage; improper adhesion/cohesion failures of sealant repairs and roof flash bands; under laminate does not turn up sidewall; lack of proper integration of roof diverter flashing; missing roof diverter flashings; use of roof flashings not in accordance with the permitted plans; use of roof tiles and under laminate not in accordance with the permitted plans; failed roofing causing water intrusion; loss of roof tiles below designed wind speed.

UNOFFICIAL

f) **Balconies**: Defective, improper, and inadequate installation of the balcony systems, including without limitation: improper and inadequate balcony slope; missing, improper, or failed balcony waterproofing; use of improper materials as balcony flashings; failure to integrate flashings in weather tight manner to protect the building from water intrusion; improper installation of balcony railings penetrating weather proofing and flashings; leaking balconies.

g) **Sitework**: Defective, improper, and inadequate installation of the site fencing, perimeter walls, pergolas, paver driveways and sidewalks.

h) **Community Pond:** Defective, improper, and inadequate installation of the community pond, causing flooding throughout the community.

i) **Pedestrian Bridge:** Defective, improper, and inadequate installation and subsequent repair of pedestrian bridge and its structural components.

226. The defects and deficiencies above constitute violations of applicable design, building, and construction practices, product specifications, industry standards, manufacturer requirements, product specifications, governmental codes and restrictions, and the Florida Building Code as in effect at the time the Subject Property was constructed, as well as at the time it was inspected and sold to the public for residential use.

227. At all times material hereto, all of the defects, deficiencies, and building code violations were or should have been known to the Defendants.

228. The defects and deficiencies were not readily discoverable by the Association or its members through reasonable inspection at the time of purchase, and the Association and its members became aware of the defects and deficiencies only after inspections performed by expert consultants.

UNOFFICIAL

229. The aggregate effect of the defects set forth above has caused, and will continue to cause: community-wide water-intrusion damage to other components of the roofs, walls and structural framing, and other components of the building, including without limitation: the building exteriors, building framing, building lath, weather resistive barrier, building sheathing and framing, interior and exterior finishes, drywall, paint, insulation, and other components of the Subject Property and common areas; damages to other property; damage to work of other trades; and undue risk of future damages throughout the Subject Property. Moreover, the defects alleged herein have caused, and will continue to cause, loss of use to the Association and its members.

230. In compliance with § 558.004, Florida Statutes, the Association has served upon Defendants written notice (the "558 Notice") including statements that the notice was being given to satisfy the requirements of Chapter 558, Florida Statutes, and specifying in reasonable detail the common defects and damages and injuries to the units, common areas, and appurtenances that are the subject of the claims, and describing in reasonable detail the common causes of the common defects to the extent known, the nature and extent of the damages and injuries resulting from the defects to the extent known, and the location of each defect to the units, common areas, and appurtenances to the extent presently known.

231. Additionally, upon information and belief, DEVELOPER provided secondary downstream notices to the SUBCONTRACTORS, architects, and engineers as provided for under § 558.004(3).

232. The Association has complied with all requirements of § 558, *et seq.*, Florida Statutes, or such requirements have been waived by the parties.

**COUNT I**
**VIOLATION OF FLORIDA BUILDING CODE**
*(AGAINST KOLTER)*



UNOFFICIAL

233. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

234. Pursuant to § 553.84, Florida Statutes, on behalf of its members, the Association has a right of action for any damages resulting from a violation of the Florida Building Code.

235. Pursuant to § 553.84, Florida Statutes, and the Florida Building Code, KOLTER owed a statutory and non-delegable duty to the Association and its members to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

236. Further, to the extent KOLTER utilized subcontractors and consultants to plan, design, and construct the Subject Property, KOLTER, as the developer and licensed general contractor, had a non-delegable duty to supervise their work. As a result, KOLTER is vicariously responsible for the negligent acts of their subcontractors and consultants, including without limitation: the negligent acts of the SUBCONTRACTORS and PROFESSIONAL CONSULTANTS defendants identified herein, as well as any other subcontractors or consultants so utilized.

237. The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code, and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

238. KOLTER's violations of the Florida Building Code include but are not limited to the defects described in Paragraph 225 above.

239. The aggregate effect of the defects set forth above has caused and will continue to cause damage, including: community-wide water-intrusion damage to other components of the roofs, walls and structural framing, and other components of the building, including without

UNOFFICIAL

limitation: the building exteriors, building framing, building lath, weather resistive barrier, building sheathing and framing, interior and exterior finishes, drywall, paint, insulation, and other components of the Subject Property and common areas; damages to other property; damage to work of other trades; and undue risk of future damages throughout the Subject Property. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

240. KOLTER knew or should have known that all of the building code violations alleged herein existed.

241. As a result of the building code violations, the Association and its members have been damaged and injured. The damages, in an amount to be determined at trial, are in excess of $30,000.00 and accumulating, and include the following without limitation:

a. All costs to investigate the Subject Property and develop a scope and plans to repair the Subject Property.

b. All costs to repair, and oversee the repairs of, the defects and the resulting damages to the Subject Property;

c. All costs to repair defects that may cause future resulting damages;

d. Loss of use, storage, and temporary housing costs caused by the defects and required during repairs;

e. Diminution in value damages;

f. Costs of temporary repairs;

g. Incidental and consequential damages caused by the defects alleged herein;

h. All costs incurred to prosecute this lawsuit; and,

i. Prejudgment interest.

UNOFFICIAL

242. The foregoing building code violations were both the legal and factual cause of the Association's damages.

243. As a result of KOLTER's conduct in violation of Florida building and construction codes and ordinances, the Association has been compelled to retain the services of undersigned counsel in order to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case, and is obligated to pay a reasonable fee for such services.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendant KOLTER SIGNATURE HOMES, LLC for damages including without limitation: damages pursuant to § 553.84, Florida Statutes; costs to repair the building code violations and resulting damage from the building code violations; incidental and consequential damages caused thereby, including without limitation loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages; costs incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**COUNT II**
**NEGLIGENCE AND VICARIOUS LIABILITY**
*(AGAINST KOLTER)*

244. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

245. At all times material hereto, KOLTER, individually, collectively, and through its agents, servants, and employees, planned, designed, and constructed the Townhomes.

246. KOLTER owed a non-delegable duty to the Association and its members to use reasonable care when designing and constructing the Townhomes, including without limitation: to

UNOFFICIAL

design and construct the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

247. KOLTER breached its duty by negligently developing, designing, constructing, and selling the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including without limitation: water damage, property damage, and damages to the work and property of other persons or entities, thereby necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

248. KOLTER further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages, including without limitation: water damage, property damage, and damages to the work and property of other persons or entities, thereby necessitating the need for repairs.

249. Further, to the extent KOLTER utilized subcontractors and consultants to construct, plan and design the Subject Property, KOLTER, as the developer and licensed general contractor had a non-delegable duty to oversee their work. As a result, KOLTER is vicariously responsible for the negligent acts of their subcontractors and consultants, including but not limited to negligent acts of the SUBCONTRACTORS and PROFESSIONAL CONSULTANTS defendants identified herein, as well as any other subcontractors or consultants so utilized.

250. KOLTER's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the Association.

UNOFFICIAL

251. As a direct and proximate result of KOLTER's negligence, the Association has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages in an amount to be determined at trial, are in excess of $30,000.00 and include but are not limited to the damages alleged in Paragraph 241 above.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendant KOLTER SIGNATURE HOMES, LLC for damages including without limitation: the costs to repair the construction deficiencies, resulting damage from the construction deficiencies, and incidental and consequential damages, including without limitation: loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages; costs incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**COUNT III**
**DECEPTIVE & UNFAIR TRADE PRACTICES**
*(AGAINST KOLTER AND DEVELOPER)*

252. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

253. The Association's members are consumers as that term is defined in § 501.203(7), Florida Statutes.

254. At all times relevant hereto, KOLTER and DEVELOPER were involved in "trade or commerce," as that term is defined in § 501.203(8), Florida Statutes, by developing, constructing or marketing the individual dwelling units and common areas of the Townhomes to the members of the Association.

UNOFFICIAL

255. KOLTER and DEVELOPER, each separately and together their joint enterprise or joint venture, employed unfair or deceptive acts on purchasers in violation of § 501.204(1), Florida Statutes, that were likely to mislead consumers. These included:

a. Express and implied representations that the Townhomes were constructed in a good and workmanlike manner and constructed in accordance with at least the minimum standards of the applicable building codes when KOLTER knew that they were not;

b. Directing and/or approving work performed by subcontractors that KOLTER knew was in violation of the applicable building codes;

c. Unfairly and wrongfully denying warranty repair requests on the basis of lack of homeowner maintenance when the issues with the Townhomes arose from KOLTER's faulty construction rather than lack of owner maintenance and KOLTER knew of same;

d. KOLTER knew that the Townhomes suffered from construction deficiencies, water intrusion issues, and other substantial defects that, if known, the Association's members would not have purchased a home for the full purchase price or would not have purchased a unit at all; and

e. Marketing the Townhomes as "maintenance free."

256. KOLTER and DEVELOPER negligently, recklessly, and/or intentionally concealed the defects identified above.

257. The representations and concealments set forth above were in derogation of Florida public policy as embodied in the Florida common law requiring sellers of real property to disclose material defects not readily apparent to a buyer of real property.

UNOFFICIAL

258. KOLTER and DEVELOPER's actions, as outlined above, were done so in an effort to maximize profits, place profits over the health, welfare, and safety of its consumers, and solely out of corporate greed and self-interest as it knew it would be unable to sell the Townhomes to consumers had it disclosed the substantial construction deficiencies.

259. Construction experts have discovered that the Townhomes were not constructed in a good and workmanlike manner and not in accordance with at least the minimum standards of the applicable building codes and other industry standards, and are plagued by water intrusion and related damages.

260. As a proximate cause of KOLTER and DEVELOEPR's deceptive and unfair trade practices, the Association, its members, and the townhome units and common areas of the Townhomes have suffered damages and been injured. Damages, in an amount to be determined at trial, exceed $30,000.00.

261. As a result of KOLTER's deceptive and unfair trade practices, the Association was compelled to retain the services of legal counsel to comply with statutory requirements prior to litigation and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case, thus entitling the Association to an award of attorneys' fees and costs in amounts to be established at the time of trial.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendant KOLTER SIGNATURE HOMES, LLC and HEATHROW OAKS, LLC for actual damages, diminution in value damages; attorneys' fees and costs pursuant to the Florida Deceptive & Unfair Trade Practices Act; trial by jury; and any other such relief this Court deems just and proper.

## COUNT IV
## VIOLATION OF FLORIDA BUILDING CODE

UNOFFICIAL

*(AGAINST DEVELOPER)*

262. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

263. Pursuant to § 553.84, Florida Statutes, on behalf of its members, the Association has a right of action for any damages resulting from a violation of the Florida Building Code.

264. Pursuant to § 553.84, Florida Statutes, and the Florida Building Code, DEVELOPER owed a statutory and non-delegable duty to the Association and its members to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

265. Further, to the extent DEVELOPER utilized subcontractors and consultants to plan, design, and construct the Subject Property, DEVELOPER, as the developer and licensed general contractor, had a non-delegable duty to supervise their work. As a result, DEVELOPER is vicariously responsible for the negligent acts of their subcontractors and consultants, including without limitation: the negligent acts of the SUBCONTRACTORS and PROFESSIONAL CONSULTANTS defendants identified herein, as well as any other subcontractors or consultants so utilized.

266. The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code, and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

267. DEVELOPER's violations of the Florida Building Code include but are not limited to the defects described in Paragraph 225 above.

UNOFFICIAL

268. The aggregate effect of the defects set forth above has caused and will continue to cause damage, including: community-wide water-intrusion damage to other components of the roofs, walls and structural framing, and other components of the building, including without limitation: the building exteriors, building framing, building lath, weather resistive barrier, building sheathing and framing, interior and exterior finishes, drywall, paint, insulation, and other components of the Subject Property and common areas; damages to other property; damage to work of other trades; and undue risk of future damages throughout the Subject Property. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

269. DEVELOPER knew or should have known that all of the building code violations alleged herein existed.

270. As a result of the building code violations, the Association and its members have been damaged and injured. The damages, in an amount to be determined at trial, are in excess of $30,000.00 and accumulating, and including those damages alleged in Paragraph 241.

271. The foregoing building code violations were both the legal and factual cause of the Association's damages.

272. As a result of DEVELOPER's conduct in violation of Florida building and construction codes and ordinances, the Association has been compelled to retain the services of undersigned counsel in order to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case, and is obligated to pay a reasonable fee for such services.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendant HEATHROW OAKS, LLC for damages

UNOFFICIAL

including without limitation: damages pursuant to § 553.84, Florida Statutes; costs to repair the building code violations and resulting damage from the building code violations; incidental and consequential damages caused thereby, including without limitation loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages; costs incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**COUNT V**
**NEGLIGENCE**
*(AGAINST DEVELOPER)*

273. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

274. At all times material hereto, DEVELOPER, individually, collectively, and through its agents, servants, and employees, planned, designed, and constructed the Townhomes.

275. DEVELOPER owed a non-delegable duty to the Association and its members to use reasonable care when designing and constructing the Townhomes, including without limitation: to design and construct the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

276. DEVELOPER breached its duty by negligently developing, designing, constructing, and selling the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including without limitation: water damage, property damage, and damages to the work and property of other persons or entities, thereby necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

UNOFFICIAL

277. DEVELOPER further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages, including without limitation: water damage, property damage, and damages to the work and property of other persons or entities, thereby necessitating the need for repairs.

278. Further, to the extent DEVELOPER utilized subcontractors and consultants to construct, plan and design the Subject Property, DEVELOPER, as the developer and licensed general contractor had a non-delegable duty to oversee their work. As a result, DEVELOPER is vicariously responsible for the negligent acts of their subcontractors and consultants, including but not limited to negligent acts of the SUBCONTRACTORS and PROFESSIONAL CONSULTANTS defendants identified herein, as well as any other subcontractors or consultants so utilized.

279. DEVELOPER's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the Association.

280. As a direct and proximate result of DEVELOPER's negligence, the Association has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages in an amount to be determined at trial, are in excess of $30,000.00 and include but are not limited to the damages alleged in Paragraph 241 above.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendant HEATHROW OAKS, LLC for damages including without limitation: the costs to repair the construction deficiencies, resulting damage

UNOFFICIAL

from the construction deficiencies, and incidental and consequential damages, including without limitation: loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages; costs incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY**
*(AGAINST DEVELOPER)*

281. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

282. DEVELOPER impliedly warranted to the Association and its members that the buildings and improvements comprising the Townhomes were reasonably fit for their intended purpose, merchantable, and habitable; and that the buildings and improvements were constructed in accordance with the plans and specifications filed as a matter of public record, the applicable building codes, and with good design, engineering, and construction practices.

283. DEVELOPER breached the implied warranties by failing to design and construct the buildings and improvements in compliance with the requirements of applicable building codes; failing to design or construct in accordance with proper and approved construction plans and specifications; and failing to employ good design, engineering and construction practices, as a result of which the Subject Property contains defects and deficiencies.

284. The existence or cause of the defects and deficiencies, and the damages caused thereby, are not of the type that would reasonably be recognizable by persons who lack special knowledge or training, or they are hidden by building components or finishes, and they are latent defects and deficiencies to the owners who, in the exercise of due diligence, did not discover the

UNOFFICIAL

existence or cause of the defects and deficiencies until after the purchase and occupancy of the units in the Townhomes.

285. As a direct and proximate cause of DEVELOPER's breaches of the implied warranties, the Association, through the assessment of its members, will be required to expend large sums of money for the repair of the defects and deficiencies and maintenance of the property, buildings and improvements, and for damages caused thereby.

286. As a result of the foregoing breaches of implied warranties, the Association and its members have been damaged and injured as alleged in Paragraph 241 and elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00 and accumulating.

287. As a direct and proximate result of DEVELOPER's breach of the above mentioned warranties, the Association, through assessment of its members, has expended and will be required to expend additional large sums of money to remedy the defects and deficiencies and to pay consequential damages to, or on behalf of, its members.

288. As a result of DEVELOPER's breaches of implied warranties, the Association has been compelled to retain the services of attorneys to comply with statutory requirements prior to litigation, to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendant HEATHROW OAKS, LLC for damages including without limitation: the costs to repair the construction deficiencies, resulting damage from the construction deficiencies, and incidental and consequential damages, including without limitation: loss of use and temporary replacement housing during repairs, temporary repair costs,

UNOFFICIAL

diminution in value damages; the costs incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**COUNT VII**
**VIOLATION OF FLORIDA BUILDING CODE**
*(AGAINST JOHN CSAPO)*

289. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

290. Pursuant to Florida Statutes §553.84, on behalf of its members, the Association has a private right of action for any damages resulting from a building-code violation.

291. JOHN CSAPO owed a non-delegable duty to the Association and its members, pursuant to the Florida Building Code ("FBC") and §553.84, Florida Statutes, to properly supervise, direct, oversee, sequence and coordinate the SUBCONTRACTORS, and to construct the Subject Property in compliance with the FBC.

292. The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable FBC, and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

293. JOHN CSAPO's violations of the FBC include, but are not limited to, causing the defects described in Paragraph 225 above.

294. The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to other components of the roofs and other components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and has created an

UNOFFICIAL

undue risk of future damages throughout the Subject Property. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

295. JOHN CSAPO knew or should have known that all of the violations alleged and described above existed.

296. As a result of the foregoing FBC violations, the Association and its members have been damaged and injured. Damages, in an amount to be determined at trial, are in excess of $30,000.00 and continuing, and include, but are not limited to the damages alleged in Paragraph 241.

297. The foregoing FBC violations were both the legal and factual cause of the aforementioned damages.

298. As a result of the conduct of JOHN CSAPO, in violation of applicable building and construction codes and ordinances, the Association has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the Association demands judgment against JOHN CSAPO for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre- and post-judgment interest, trial by jury, and any other relief the Court deems just and proper.

**COUNT VIII**
**NEGLIGENCE AND VICARIOUS LIABILITY**

UNOFFICIAL

*(AGAINST JOHN CSAPO)*

299. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

300. At all times material hereto, JOHN CSAPO was responsible for directing, sequencing, coordinating, and instructing the SUBCONTRACTORS in the construction of the Subject Property.

301. JOHN CSAPO owed a non-delegable duty to the Association and its members to use reasonable care during his activities throughout construction of the Subject Property.

302. JOHN CSAPO had a duty to use reasonable care to properly instruct, direct, sequence, and coordinate the work of the SUBCONTRACTORS, including, but not limited to, ensuring that the SUBCONTRACTORS constructed the Subject Property to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

303. JOHN CSAPO breached his duties by negligently directing, instructing, sequencing, and coordinating the work of the SUBCONTRACTORS, which failed to properly construct the Subject Property, which failures were due at least in part to the failures of JOHN CSAPO to give proper direction, instruction, and oversight, and to properly sequence and coordinate the SUBCONTRACTORS' work.

304. JOHN CSAPO's actions have caused and will continue to cause, damage to the Subject Property, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

UNOFFICIAL

305. JOHN CSAPO further breached his duty by failing to ensure compliance with at least the minimum requirements of the applicable codes and standards, and by failing to ensure construction of the Subject Property was constructed in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Subject Property, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating theneed for repairs.

306. JOHN CSAPO's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the Association.

307. As a direct and proximate result of JOHN CSAPO's negligence, the Association has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages in an amount to be determined at trial, are in excess of $30,000.00 and include, but are not limited to the damages alleged in Paragraph 241 above.

**WHEREFORE** the Association demands judgment against JOHN CSAPO for damages including but not limited to the cost of repairing the construction deficiencies, the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre- and post-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## COUNT IX
## VIOLATION OF FLORIDA BUILDING CODE
*(AGAINST SUBCONTRACTORS)*

308. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.



UNOFFICIAL

309. Pursuant to § 553.84, Florida Statutes, on behalf of its members, the Association has a private right of action for any damages resulting from a violation of the Florida Building Code.

310. Pursuant to the Florida Building Code and § 553.84, Florida Statutes, each of the Defendant SUBCONTRACTORS owed a statutory duty to the Association and its members to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

311. The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code, and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

312. SUBCONTRACTORS collectively and individually violated the Florida Building Code by improper performing their scope of work for the Townhomes and failing to properly integrate their work with the work of other trades.

313. SUBCONTRACTORS' violations of the Florida Building Code caused the defects and deficiencies described in Paragraph 225 above.

314. SUBCONTRACTORS' negligence in performing its scope of work has caused, and will continue to cause, damage to the Townhomes, including without limitation: water-intrusion damages to components of the building, including without limitation: the building exteriors, building framing, building sheathing, building lath, drywall, paint, interior and exterior finishes, and other components of the Townhomes; and undue risk of future damages throughout the Townhomes; damage to other property; and damages to the work of other trades, persons, or

UNOFFICIAL

entities, thereby necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

315. SUBCONTRACTORS knew or should have known that the violations alleged and described above existed.

316. As a result of the foregoing Florida Building Code violations, the Association and its members have been damaged and injured as alleged in Paragraph 241 and elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00.

317. The foregoing Florida Building Code violations were both the legal and factual cause of the aforementioned damages.

318. As a result of the conduct of the SUBCONTRACTORS, in violation of applicable building and construction codes and ordinances, the Association has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendants, SUBCONTRACTORS, for damages including, without limitation: damages pursuant to § 553.84, Florida Statutes; the cost of repairing the building code violations; the resulting damages from the building code violations; incidental and consequential damages caused thereby, including without limitation: loss of use and temporary replacement housing during repairs; temporary repair costs; diminution in value damages; costs incurred in the prosecution of this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**COUNT X**
**NEGLIGENCE**

UNOFFICIAL

*(AGAINST SUBCONTRACTORS)*

319. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

320. At all times material hereto, each of the Defendant SUBCONTRACTORS, through its agents, servants and employees, constructed the Townhomes and was responsible for their scope of work as identified above.

321. SUBCONTRACTORS each owed a duty to the Association and its members to use reasonable care when constructing the Townhomes, including, but not limited to, performing its scope of work to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

322. SUBCONTRACTORS breached their duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, industry standards, contract documents, and manufacturers' recommendations for the Townhomes, including but not limited to those defects and deficiencies identified in Paragraph 225 above.

323. SUBCONTRACTORS' negligence in performing their scopes of work has caused, and will continue to cause, damage to the Townhomes, including without limitation: water-intrusion damages to components of the building including without limitation: the building exteriors, building framing, building sheathing, building lath, drywall, paint, interior and exterior finishes, and other components of the Townhomes; undue risk of future damages throughout the Townhomes; damage to other property; and damages to the work of other trades, persons, or

UNOFFICIAL

entities, thereby necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

324. SUBCONTRACTORS' acts and omissions were a direct, proximate, and legal cause of the damages suffered by the Association.

325. As a direct and proximate result of SUBCONTRACTORS' negligence, the Association has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged Paragraph 241 and elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendants, SUBCONTRACTORS, for damages including without limitation: the costs to repair the construction deficiencies, resulting damage from the construction deficiencies, and incidental and consequential damages, including without limitation: loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages; the costs incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**COUNT XI**
**VIOLATION OF FLORIDA BUILDING CODE**
*(AGAINST PROFESSIONAL CONSULTANTS)*

326. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

327. PROFESSIONAL CONSULTANTS were the architects and engineers of record for the Townhomes and provided professional architectural and engineering services for the

UNOFFICIAL

Townhomes and, as such, designed, inspected, and approved the Subject Property and its related improvements.

328. Throughout the design, inspection, and approval of the Townhomes, PROFESSIONAL CONSULTANTS were under a professional duty to the Association to use reasonable care and to ensure that the design and construction of the Townhomes complied with all applicable building codes, and that the design drawings were detailed to a sufficiently high standard and clearly and accurately indicating or illustrating all essential parts of the work.

329. PROFESSIONAL CONSULTANTS breached their duties by failing to design the Townhomes with details to a sufficiently high standard and clearly and accurately indicating or illustrating all essential parts of the work, causing the Townhomes to be built with essential elements not in compliance with the Florida Building Code and with the defects alleged in Paragraph 225.

330. As the architects and engineers of record for the Subject Property, PROFESSIONAL CONSULTANTS knew or should have known that building-code violations existed.

331. As a result of the foregoing Florida Building Code violations, the Association and its members have been damaged and injured. Damages, in an amount to be determined at trial, are in excess of $30,000.00 and accumulating, and include but are not limited to the damages alleged in Paragraph 241.

332. The foregoing Florida Building Code violations were both the legal and factual cause of the aforementioned damages.

333. As a result of PROFESSIONAL CONSULTANTS' conduct in violation of applicable building and construction codes and ordinances, the Association has been compelled to

UNOFFICIAL

retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendants, ARCHITECTURAL STUDIO, INC.; ARDAMAN & ASSOCIATES, INC.; ASE ENGINEERING SERVICES, INC.; CLEAR ENGINEERING, LLC; KIMLEY-HORN AND ASSOCIATES, INC.; MINSHENG XIE; and SCOTT BLAKESLEE DISHER, for damages including, without limitation: damages pursuant to § 553.84, Florida Statutes; the cost of repairing the building code violations; the resulting damages from the building code violations; incidental and consequential damages caused thereby, including without limitation: loss of use and temporary replacement housing during repairs; temporary repair costs; diminution in value damages; costs incurred in the prosecution of this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

## COUNT XII
## PROFESSIONAL NEGLIGENCE
*(AGAINST PROFESSIONAL CONSULTANTS)*

334. The Association reasserts, re-alleges, and incorporates by reference all allegations made in Paragraphs 1 through 232 of this Complaint.

335. PROFESSIONAL CONSULTANTS were the architects and engineers of record for the Townhomes and provided professional architectural and engineering services for the Townhomes.

336. PROFESSIONAL CONSULTANTS owed a duty to the Association and its members to provide its professional architectural and engineering services in accordance with the standard of care used by similar professionals in the community under similar circumstances,

UNOFFICIAL

including without limitation: providing final drawings of a sufficiently high standard to clearly and accurately indicate or illustrate all essential parts of the work to which they refer, and performing construction administration duties such that the work identified in its drawings was performed in accordance with the permitted plans and specifications, and in accordance with the applicable building codes, manufacturers' recommendations, and industry standards in effect at the time of construction.

337. PROFESSIONAL CONSULTANTS breached the above-mentioned duties during the design and construction of the Subject Property in that PROFESSIONAL CONSULTANTS' performance of their architectural and engineering services were not within the standard of care used by similar professionals under similar circumstances; the drawings were not of a sufficiently high standard to clearly and accurately indicate or illustrate all essential parts of the work; and its construction administration services were not within the standard of care used by similar professionals under similar circumstances.

338. As a direct and proximate result of PROFESSIONAL CONSULTANTS' professional negligence, the Association has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages in an amount to be determined at trial, are in excess of $30,000.00 and include but are not limited to the damages alleged in Paragraph 241 above.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendants, ARCHITECTURAL STUDIO, INC.; ARDAMAN & ASSOCIATES, INC.; ASE ENGINEERING SERVICES, INC.; CLEAR ENGINEERING, LLC; KIMLEY-HORN AND ASSOCIATES, INC.; MINSHENG XIE; and

UNOFFICIAL

SCOTT BLAKESLEE DISHER, for damages including without limitation: the costs to repair the construction deficiencies, resulting damage from the construction deficiencies, and incidental and consequential damages, including without limitation: loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages; the costs incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

DATED: December 29, 2020

**BALL JANIK LLP**

By: */s/ Brett J. Roth, Esq.*

**Phillip E. Joseph**, FL Bar No. 1000368
**Evan J. Small**, FL Bar No. 57306
**Brett J. Roth**, FL Bar No. 102214
**Allana D.E. Smith**, FL Bar No. 1025757
201 E Pine Street, Suite 600
Orlando, FL 32801
Telephone: (407) 455-5664
Facsimile: (407) 902-2105
pjoseph@balljanik.com
esmall@balljanik.com
broth@balljanik.com
asmith@balljanik.com
varchie@balljanik.com
pehlert@balljanik.com
dmiksell@balljanik.com
cbetancourt@balljanik.com
orlandodocket@balljanik.com

*Counsel for Plaintiff Grande Oaks at Heathrow Association, Inc.*

UNOFFICIAL

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing has been filed and served via the Florida Courts E-Filing Portal on this 29th day of December 2020.

**BALL JANIK LLP**

By: */s/ Brett J. Roth, Esq.*

**Phillip E. Joseph**, FL Bar No. 1000368
**Evan J. Small**, FL Bar No. 57306
**Brett J. Roth**, FL Bar No. 102214
**Allana D.E. Smith**, FL Bar No. 1025757
201 E Pine Street, Suite 600
Orlando, FL 32801
Telephone: (407) 455-5664
Facsimile: (407) 902-2105
pjoseph@balljanik.com
esmall@balljanik.com
broth@balljanik.com
asmith@balljanik.com
varchie@balljanik.com
pehlert@balljanik.com
dmiksell@balljanik.com
cbetancourt@balljanik.com
orlandodocket@balljanik.com

*Counsel for Plaintiff Grande Oaks at Heathrow Association, Inc.*

UNOFFICIAL