# EXHIBIT "C"

THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

GRANDE OAKS AT HEATHROW ASSOCIATION, INC., a Florida Not-For-Profit Corporation,

Plaintiff,

v.

THE KOLTER GROUP, LLC; and MARK BINES,

Defendants.

Case No.: 2022CA000542

**PLAINTIFF'S COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC. (the "Association"), by and through its undersigned counsel, files this Complaint against Defendants, THE KOLTER GROUP, LLC ("KOLTER GROUP"); and MARK BINES ("BINES"); and seeks trial by jury. In support thereof, the Association alleges as follows:

**BACKGROUND OF THE CASE**

1. This is an action for damages arising from the defective construction, management, and sale of the individual units and common areas of the Grande Oaks at Heathrow residential community located in Lake Mary, Seminole County, Florida (the "Townhomes" or "Subject Property") caused by the parties responsible for the development, design, and construction of the Townhomes.

2. The Association alleges claims for breach of Florida Building Code, deceptive and unfair trade practices, negligence, breach of fiduciary duty, and respondent Superior.



UNOFFICIAL

*** E-FILED: GRANT MALOY, CLERK OF CIRCUIT COURT SEMINOLE COUNTY, FL 03/10/2022 03:10:16 PM.****

UNOFFICIAL

## JURISDICTION AND VENUE

3. This is an action for monetary damages in excess of $30,000.00, exclusive of interest, costs, and attorney's fees, and this Court otherwise has jurisdiction over the subject matter hereof.

4. The Subject Property of this action is located within Seminole County, Florida.

5. The Association has an office for the transaction of its usual and customary business located within Seminole County, Florida.

6. At all times material, Defendants conducted business in Seminole County, Florida, including for the construction of the Subject Property.

7. The acts or omissions giving rise to this Complaint took place in Seminole County, Florida, and each cause of action occurred in Seminole County, Florida. Therefore, jurisdiction and venue are proper in this county. Further, this action is properly filed in Seminole County, Florida under Chapter 47, *Florida Statutes*, because the cause of action sued upon herein accrued in Seminole County, Florida.

8. All conditions precedent to bringing this action have occurred or have been waived, including without limitation the requirements prescribed under Chapter 558, *Florida Statutes*.

## FACTS RELEVANT TO THE PARTIES

9. The Association is a Florida not-for-profit corporation organized and existing pursuant to Chapter 720, *Florida Statutes*, to provide a corporate entity, pursuant to § 720.302, *Florida Statutes*, for the operation of the Grande Oaks at Heathrow community.

10. In total, the Subject Property, which is located in Seminole County, Florida, consists of 52 two and three-story residential buildings containing 314 units and associated common areas, including roadways, sidewalks, fencing, a bridge, and a pond.

11. The Association brings this action in its own right and as a lawful representative for its members who own the Townhomes that Defendants designed, built, and sold, and which suffer from defects and damages affecting the exterior walls, window penetrations, roofing systems, drywall, stucco, paint, sheathing, framing, lath, and other common elements affecting the Association and its members as a matter of common interest.

12. Pursuant to §720.303(1), *Florida Statutes*, and Rule 1.221, *Florida Rules of Civil Procedure*, the Association is the lawful, adequate, and appropriate class representative of the Townhomes' owners and all common areas, improvements, and appurtenances incident thereto.

13. KOLTER GROUP is a Florida limited liability company with its principal place of business located in Delray Beach, Florida.

14. At all applicable times, KOLTER GROUP owned, managed, or otherwise controlled Kolter Signature Homes, LLC ("KOLTER"), and Heathrow Oaks, LLC ("DEVELOPER").

15. KOLTER GROUP, KOLTER and DEVELOPER are therefore related entities.

16. KOLTER served as the builder and licensed "general contractor," as that term is defined in § 489.105(3)(a), *Florida Statutes*, for the construction of the Townhomes.

17. As the General Contractor for the Subject Property, KOLTER was responsible for the development, design, and construction of the Subject Property, including without limitation retaining, hiring, supervising, directing, and coordinating the work.

18. JOHN CSAPO is a citizen of Florida and is a licensed Certified General Contractor in the state of Florida.

19. JOHN CSAPO served as the qualifying agent for KOLTER and the Certified General Contractor, as those terms are defined in § 489.105(3)(b) and § 489.105(4), Fla. Stat., and



UNOFFICIAL

was responsible for the construction of the Subject Property, including without limitation supervising, directing, and coordinating the work.

20. At all material times hereto, during JOHN CSAPO was an employee of KOLTER GROUP, and was assigned by KOLTER GROUP, to assist its subsidiary KOLTER in constructing the Subject Property.

21. DEVELOPER served as the developer and declarant of the Townhomes.

22. As the developer for the Subject Property, DEVELOPER was responsible for the development, design, and construction of the Subject Property, including without limitation retaining, hiring, supervising, directing, and coordinating the work.

23. As the Townhomes' developer, DEVELOPER owed a statutory duty to the Association and its members, pursuant to the applicable building codes and § 553.84, *Florida Statutes*, and a common-law duty to construct the Subject Property in accordance with the applicable plans and specifications, manufacturers' guidelines, and standard industry practices, so as to prevent harm and damage to the Association and its members.

24. BINES is a citizen of Florida.

25. At all relevant times BINES was an employee of KOLTER GROUP.

26. BINES was appointed by DEVELOPER and KOLTER GROUP to the Association's developercontrolled board, and in that capacity served as President of the Association from approximately 2013 through turnover of the Subject Property to the Association's members in 2019.

27. KOLTER and DEVELOPER, under the direct control of KOLTER GROUP, worked together serving as conduits for each other, forming a joint enterprise or joint venture



UNOFFICIAL

between the KOLTER GROUP, KOLTER, and DEVELOPER to develop, construct, market, and sell the townhomes to the public, including to the Association's members.

28. As a result of Defendants' conduct, the Association has been required to retain the services of the undersigned counsel to represent its interests in this action and is obligated to pay a reasonable fee for their services.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

29. The Association's members are collectively the fee-simple owners of the units, common areas, and the Subject Property.

30. The Association has the responsibility or right to maintain the common areas and exteriors of the Townhomes, including without limitation the building exteriors and roofs.

31. The Association also has the duty to maintain the Subject Property by making all proper expenditures, where possible, for the Subject Property's upkeep and management.

32. Upon information and belief, DEVELOPER controlled the Association until legal turnover of the Association to the unit owners which occurred in 2019.

33. The causes of action alleged herein concern matters of common interest to the Townhomes and the Association's members.

34. Defendants collectively undertook to plan, design, develop, construct, mass produce, and/or market the Townhomes for sale to, and use of, the general public, including the Association, its members, and their predecessors in interest.

35. In so doing, Defendants failed to plan, design, develop, or construct the Townhomes reasonably, adequately, and in a good and workmanlike manner.

36. As a direct result of the collective and individual failures on the part of Defendants, the Association and its members have suffered and continue to suffer damages proximately defects



UNOFFICIAL

and deficiencies in the construction of the Townhomes, including without limitation the following defects and deficiencies caused by improper construction or design:

a) **Stucco and weather resistive barriers:** Defective, improper and inadequate installation of stucco in violation of the Florida Building Code, ASTM C1063, and ATSM C926; water intrusion; excessive cracking on building exteriors; inadequate number of stucco coats; improper thickness of stucco coats; improper and/or inadequate embedment; improperly installed or missing control joints; improperly installed lath; undersized lath fasteners; improperly spaced lath fasteners; improperly installed building paper; improperly installed or lack of weep screeds; lack of separation between stucco and dissimilar materials, including at exterior wall penetrations and windows; lack of casing beads along the jambs of the windows and exterior wall penetration flashings; improperly installed decorative banding; improperly installed and missing stucco accessories; improper laps of weather resistive barrier; improper lath laps; improper taping of weather resistive barrier; improper termination of weather resistive barrier; improper integration of weather resistive barrier and weep screeds; improper integration of weather resistive barrier and roof diverters and roof to wall intersection and facias; improper integration of weather resistive barrier and flashing with penetrating elements such as plumbing, HVAC, and mechanical, and electrical penetrations; reverse lap of weather resistive barrier at windows.

b) **Exterior paint, caulk and sealants:** Defective and improper installation of paint, caulk, and sealants, including without limitation: improper paint materials not in compliance with the plans and specifications; improper, inadequate or missing exterior caulking and sealants, including failed or missing caulk at intersections of stucco and windows, sliding glass doors, stucco bands, control joints, stucco stops, balcony railings, balcony flashings,



UNOFFICIAL

roof flashings, and penetrating elements, including electrical panels, HVAC, and plumbing penetrations; and lack of proper application of sealant between stucco and dissimilar materials.

c) **Framing, zip sheathing, and shear walls:** Defective, improper, and inadequate installation of structural framing, zip sheathing, and shear walls, including without limitation: improper and inadequate nailing of sheathing and framing; inadequate spacing between sheathing panels, improper reinforcing, connections; member sizing of all structures; improper and inadequate balcony faming slope; improper, incomplete, and missing zip tape and flashings; improper installation of zip tape and flashings, failing to "roll the tape", installation of sheathing in improper orientation; improper or missing shear transfer mechanisms; improper or missing installation of tiedowns/hurricane straps; improper integration of weather resistive barrier at confined rakes, balconies, and flashing penetrations.

d) **Window installation and flashings:** Defective, improper and inadequate installation of windows, including without limitation: improper and inadequate flashing and installation of windows; leaking and failed window assemblies; flashing not fully adhered; improperly installed flashing; windows not installed in accordance with the plans and specifications; missing sealants; improper window taping; missing or improperly installed through wall head flashing; missing or improperly installed window sill and corner flashings; and improper window fasteners.

e) **Roofs**: Defective, improper, and inadequate installation of the roof systems, including without limitation: roof tiles; nailing of roof tiles; roof underlayment; voids in the roofing cement; height of plumbing vent stacks; roof flashing; eve flashing; roof covering;



UNOFFICIAL

improper and inadequate roof drainage; improper adhesion/cohesion failures of sealant repairs and roof flash bands; under laminate does not turn up sidewall; lack of proper integration of roof diverter flashing; missing roof diverter flashings; use of roof flashings not in accordance with the permitted plans; use of roof tiles and under laminate not in accordance with the permitted plans; failed roofing causing water intrusion; loss of roof tiles below designed wind speed.

f) **Balconies**: Defective, improper, and inadequate installation of the balcony systems, including without limitation: improper and inadequate balcony slope; missing, improper, or failed balcony waterproofing; use of improper materials as balcony flashings; failure to integrate flashings in weather tight manner to protect the building from water intrusion; improper installation of balcony railings penetrating weather proofing and flashings; leaking balconies.

37. The defects and deficiencies above constitute violations of applicable design, building, and construction practices, product specifications, industry standards, manufacturer requirements and instructions, product specifications, governmental codes and restrictions, and the Florida Building Code as in effect at the time the Subject Property was constructed, as well as at the time it was inspected and sold to the public for residential use.

38. At all times material hereto, all of the defects, deficiencies, and building code violations were or should have been known to the Defendants.

39. The aggregate effect of the defects set forth above has caused, and will continue to cause: community-wide water-intrusion damage to other components of the roofs, walls and structural framing, and other components of the building, including without limitation: the building exteriors, building framing, building lath, weather resistive barrier, building sheathing and

UNOFFICIAL

framing, interior and exterior finishes, drywall, paint, insulation, and other components of the Subject Property and common areas; damages to other property; damage to work of other trades; and undue risk of future damages throughout the Subject Property. Moreover, the defects alleged herein have caused, and will continue to cause, loss of use to the Association and its members.

40. In compliance with § 558.004, Florida Statutes, the Association has served upon Defendants written notice (the "558 Notice") including statements that the notice was being given to satisfy the requirements of Chapter 558, Florida Statutes, and specifying in reasonable detail the common defects and damages and injuries to the units, common areas, and appurtenances that are the subject of the claims, and describing in reasonable detail the common causes of the common defects to the extent known, the nature and extent of the damages and injuries resulting from the defects to the extent known, and the location of each defect to the units, common areas, and appurtenances to the extent presently known.

41. The Association has complied with all requirements of § 558, *et seq.*, *Florida Statutes*, or such requirements have been waived by the parties.

**COUNT I**
**DECEPTIVE & UNFAIR TRADE PRACTICES**
*(AGAINST KOLTER GROUP)*

42. The Association reasserts, re-alleges, and incorporates by reference all allegations made in ¶¶ 1 through 41 of this Amended Complaint.

43. The Association's members are consumers as that term is defined in § 501.203(7), Florida Statutes.

44. At all times relevant hereto, KOLTER GROUP was involved in "trade or commerce," as that term is defined in § 501.203(8), Florida Statutes, by developing, constructing



UNOFFICIAL

or marketing the individual dwelling units and common areas of the Townhomes to the members of the Association.

45. KOLTER GROUP, KOLTER and DEVELOPER, and together formed joint enterprise or joint venture, employed unfair or deceptive acts on purchasers in violation of § 501.204(1), *Florida Statutes*, that were likely to mislead consumers. These included:

a. Express and implied representations that the Townhomes were constructed in a good and workmanlike manner and constructed in accordance with at least the minimum standards of the applicable building codes when knew KOLTER GROUP, KOLTER and DEVELOPER that they were not;

b. Directing and/or approving work performed by subcontractors that KOLTER GROUP, KOLTER and DEVELOPER knew was in violation of the applicable building codes;

c. Unfairly and wrongfully denying warranty repair requests on the basis of lack of homeowner maintenance when the issues with the Townhomes arose from KOLTER GROUP, KOLTER and DEVELOPER's faulty construction rather than lack of owner maintenance and KOLTER knew of same;

d. KOLTER GROUP, KOLTER and DEVELOPER knew that the Townhomes suffered from construction deficiencies, water intrusion issues, and other substantial defects that, if known, the Association's members would not have purchased a home for the full purchase price or would not have purchased a unit at all; and

e. KOLTER GROUP, KOLTER and DEVELOPER failed to disclose critical safety warnings concerning the townhomes to the Association or its members.



UNOFFICIAL

f. Marketing the Townhomes as "maintenance free."

46. KOLTER GROUP, and its employees acting in the court and scope of employment negligently, recklessly, and/or intentionally concealed the defects identified above.

47. The representations and concealments set forth above were in derogation of Florida public policy as embodied in the Florida common law requiring sellers of real property to disclose material defects not readily apparent to a buyer of real property.

48. KOLTER GROUP's actions, as outlined above, were done so in an effort to maximize profits, place profits over the health, welfare, and safety of its consumers, and solely out of corporate greed and self-interest as it knew it would be unable to sell the Townhomes to consumers had it disclosed the substantial construction deficiencies.

49. Construction experts have discovered that the Townhomes were not constructed in a good and workmanlike manner and not in accordance with at least the minimum standards of the applicable building codes and other industry standards, and are plagued by water intrusion and related damages.

50. As a proximate cause of KOLTER GROUP's deceptive and unfair trade practices, the Association, its members, and the townhome units and common areas of the Townhomes have suffered damages and been injured. Damages, in an amount to be determined at trial, exceed $30,000.00.

51. As a result of KOLTER GROUP's deceptive and unfair trade practices, the Association was compelled to retain the services of legal counsel to comply with statutory requirements prior to litigation and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case, thus entitling the

UNOFFICIAL

Association to an award of attorneys' fees and costs in amounts to be established at the time of trial.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendants KOLTER GROUP, LLC, for actual damages, diminution in value damages; nominal damages; attorneys' fees and costs pursuant to the Florida Deceptive & Unfair Trade Practices Act; trial by jury; and any other such relief this Court deems just and proper.

**COUNT II**
**VIOLATION OF FLORIDA BUILDING CODE**
(*AGAINST KOLTER GROUP*)

52. The Association reasserts, re-alleges, and incorporates by reference all allegations made in ¶¶ 1 through 41 of this Amended Complaint.

53. Pursuant to § 553.84, *Florida Statutes*, on behalf of its members, the Association has a right of action for any damages resulting from a violation of the Florida Building Code.

54. Pursuant to § 553.84, *Florida Statutes*, and the Florida Building Code, KOLTER GROUP owed a duty to the Association and its members to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

55. KOLTER GROUP, was at all relevant times the direct employer of the following individuals:

a. John Csapo

b. Joseph John Pease;

c. Miguel Arceses;

d. Alissa Bennett;

e. Mark Bines;



UNOFFICIAL

f. Mario Manza;

g. Steve Bovio;

h. James Wait;

i. Kevin Morrisey;

j. Emily Vaughn;

k. Dana Chris Olsen;

l. Jennifer (Wallace) Pepe

m. Budget (Stevens) Mockler; (collectively, the "KOLTER EMPLOYEES").

56. KOLTER GROUP directed and controlled its employees, including the KOLTER EMPLOYEES requiring them to perform services benefiting KOLTER GROUP by having these employees perform tasks for its two subsidiaries, KOLTER and DEVELOPER, in order to construct, sell, and otherwise develop the Subject Property.

57. At all times material hereto, KOLTER GROUP exercised control over the KOLTER EMPLOYEES in their performance of the work related to the Subject Property, including, but not limited to, controlling and directing employee work hours, developing, preparing, as well as maintaining an employee handbooks and a Kolter Homes policies and procedures manual that the KOLTER EMPLOYEES were expected and required to follow with respect to their work constructing, developing, selling the Subject Property.

58. At all material times, the KOLTER EMPLOYEES were acting within the course and scope of their employment with KOLTER GROUP while performing work related to the development, construction, and sale the Subject Property.

UNOFFICIAL

59. KOLTER GROUP, is vicariously responsible for the negligent acts and omissions of the KOLTER EMPLOYEES identified herein, as well as any other employees, agents, and servants so utilized.

60. The KOLTER EMPLOYEES thorough their acts and omissions violated the Florida Building Code leading to the defects in ¶36 to exist at the Subject Property.

61. The aggregate effect of the defects set forth above has caused and will continue to cause damage, including: community-wide water-intrusion damage to other components of the roofs, walls and structural framing, and other components of the building, including without limitation: the building exteriors, building framing, building lath, weather resistive barrier, building sheathing and framing, interior and exterior finishes, drywall, paint, insulation, and other components of the Subject Property and common areas; damages to other property; damage to work of other trades; and undue risk of future damages throughout the Subject Property. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

62. KOLTER GROUP, and the KOLTER EMPLOYEES knew or should have known that all of the building code violations alleged herein existed.

63. As a result of the building code violations, the Association and its members have been damaged and injured. The damages, in an amount to be determined at trial, are in excess of $30,000.00 and accumulating, and include the following without limitation:

a. All costs to investigate the Subject Property and develop a scope and plans to repair the Subject Property.

b. All costs to repair, and oversee the repairs of, the defects and the resulting damages to the Subject Property;



UNOFFICIAL

c. All costs to repair defects that may cause future resulting damages;

d. Loss of use, storage, and temporary housing costs caused by the defects and required during repairs;

e. Diminution in value damages;

f. Costs of temporary repairs;

g. Incidental and consequential damages caused by the defects alleged herein;

h. All costs incurred to prosecute this lawsuit; and,

1. Prejudgment interest.

64. The foregoing building code violations were both the legal and factual cause of the Association's damages.

65. As a result of the conduct, acts and omissions of the KOLTER EMPLOYEES, who at all material times were acting in the course and scope of their employment with KOLTER GROUP, as well as under the direct control and supervision of KOLTER GROUP in violation of Florida building and construction codes and ordinances, the Association has been compelled to retain the services of undersigned counsel in order to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case, and is obligated to pay a reasonable fee for such services.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendant THE KOLTER GROUP, LLC, for damages including without limitation: damages pursuant to § 553.84, Florida Statutes; costs to repair the building code violations and resulting damage from the building code violations; incidental and consequential damages caused thereby, including without limitation loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages; costs

UNOFFICIAL

incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**COUNT III**
**NEGLIGENCE AND VICARIOUS LIABILITY**
(*AGAINST KOLTER GROUP*)

66. The Association reasserts, re-alleges, and incorporates by reference all allegations made in ¶¶ 1 through 41 of this Amended Complaint.

67. At all times material hereto, KOLTER GROUP, individually, collectively, and through its agents, servants, and employees, planned, designed, and constructed the Subject Property.

68. At all times material hereto, KOLTER GROUP exercised control over the KOLTER EMPLOYEES in their performance of the work related to the Subject Property, including, but not limited to, controlling and directing employee work hours, developing, preparing, as well as maintaining an employee handbooks and a Kolter Homes policies and procedures manual that the KOLTER EMPLOYEES were expected and required to follow with respect to their work constructing, developing, selling the Subject Property.

69. At all material times, the KOLTER EMPLOYEES were acting within the course and scope of their employment with KOLTER GROUP while performing work related to the development, construction, and sale the Subject Property.

70. KOLTER GROUP, is vicariously responsible for the negligent acts and omissions of the KOLTER EMPLOYEES identified herein, as well as any other employees, agents, and servants so utilized.

71. KOLTER GROUP and the KOLTER EMPLOYEES owed a duty to the Association and its members to use reasonable care when designing and constructing the Subject



UNOFFICIAL

Property, including without limitation: to design and construct the Subject Property to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

72. KOLTER GROUP, through the KOLTER EMPLOYEES, breached its duty by negligently developing, designing, constructing, and selling the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including without limitation: water damage, property damage, and damages to the work and property of other persons or entities, thereby necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

232. KOLTER GROUP, through the KOLTER EMPLOYEES, breached its duty further breached their duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages, including without limitation: water damage, property damage, and damages to the work and property of other persons or entities, thereby necessitating the need for repairs.

234. The negligent acts and omissions of the KOLTER GROUP, through the KOLTER EMPLOYEES, includes, but is not limited to, the defective work described above, all of which was performed in the regular course and scope of the KOLTER EMPLOYEES' work at the Subject Project, were a direct, proximate, and legal cause of the damages suffered by the Association.

235. As a direct and proximate result of the negligence of the KOLTER EMPLOYEES, the Association has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the



UNOFFICIAL

incidental and consequential damages in an amount to be determined at trial, are in excess of $30,000.00 and include but are not limited to the damages alleged in ¶ 63 above.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendant KOLTER GROUP, LLC for damages including without limitation: the costs to repair the construction deficiencies, resulting damage from the construction deficiencies, and incidental and consequential damages, including without limitation: loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages; costs incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**COUNT IV**
**NEGLIGENCE**
**(*AGAINST MARK BINES*)**

73. The Association reasserts, re-alleges, and incorporates by reference all allegations made in ¶¶ 1 through 41 of this Amended Complaint.

74. BINES served as President of the DEVELOPER controlled Association board of directors from 2013 through turnover of the Subject Property to the Association while simultaneously remaining as an employee of KOLTER GROUP.

75. As such, and pursuant to Florida law, BINES owed statutory, fiduciary, and common law duties to the Association and its members including, but not limited to, the duty of: a) loyalty; b) good faith and fair dealing; and c) reasonable care, among others.

76. Moreover, pursuant to Florida law, BINES' position as board president prohibited BINES from engaging in self-dealing, committing any act or omission that would create a conflict of interest, and required BINES to, at all times, act in the best interests of the Association, and its members.



UNOFFICIAL

77. BINES owed a duty to the Association and its members to ensure that the DEVELOPER controlled board was, at all times, acting in the best interest of the Association and its members which included, but is not limited to, ensuring that the Subject Property was properly maintained and/or that appropriate maintenance was undertaken and performed as recommended.

78. The Association has filed a separate lawsuit against KOLTER, DEVELOPER, JOHN CSAPO and others, under Case No. 2020-CA-003188 in the 18th Judicial Circuit in and for Seminole County Florida.

79. In Case No. 2020-CA-003188, Defendants, KOLTER, DEVELOPER, JOHN CSAPO, and others allege as an affirmative defense that the Association and its board members were negligent in maintaining the Subject Property.

80. While, the Association disagrees with those defenses regarding lack of maintenance, if true, then BINES was personally negligent, and in fact breached his duties by failing to ensure that maintenance was performed during his tenure as President of the Association's board during developer control period.

81. Accordingly, BINES' acts and omissions are the direct, proximate, and legal cause of the damages suffered by the Association.

82. BINES' negligence, has caused or will cause the Association to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages in an amount to be determined at trial, are in excess of $30,000.00 and include but are not limited to the damages alleged in ¶ 63above, as well as any amounts attributed on the verdict form to the Association for failed maintenance.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendant MARK BINES for damages including without

UNOFFICIAL

limitation: the costs to repair the construction deficiencies, resulting damage from the construction deficiencies, and incidental and consequential damages, including without limitation: loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages; costs incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**COUNT V**
**BREACH OF FIDUCIARY DUTY**
**(*AGAINST MARK BINES*)**

83. The Association reasserts, re-alleges, and incorporates by reference all allegations made in ¶¶ 1 through 41 of this Amended Complaint.

84. BINES served as President of the DEVELOPER controlled Association board of directors from 2013 through turnover of the Subject Property to the Association while simultaneously remaining as an employee of KOLTER GROUP.

85. A special relationship of trust and confidence existed between BINES, the Association and its members, due to BINES' position as President of the DEVELOPER controlled association board of directors.

86. The Association and its members placed their trust and confidence in BINES to act in the best interest of the Association and its members, including, but not limited to, ensuring that the Subject Property be properly maintained, and that recommended maintenance be performed.

87. As President, BINES had a right of control with respect to the maintenance of the Subject Property, but also had an equal obligation to treat the Association and its members with the utmost candor, honesty and fair dealing.

88. BINES owed a fiduciary duty to the Association and its members to ensure that the DEVELOPER controlled board was, at all times, acting in the best interest of the Association and

UNOFFICIAL

its members which included, but is not limited to, ensuring that the Subject Property was properly maintained and/or that appropriate maintenance was undertaken and performed as recommended.

89. The Association has filed a separate lawsuit against KOLTER, DEVELOPER, JOHN CSAPO and others, under Case No. 2020-CA-003188 in the 18th Judicial Circuit in and for Seminole County Florida.

90. In Case No. 2020-CA-003188, Defendants, KOLTER, DEVELOPER, JOHN CSAPO, and others allege as an affirmative defense that the Association and its board members were negligent in maintaining the Subject Property.

91. While, the Association disagrees with those defenses regarding lack of maintenance, if true, then BINES was personally negligent, and in fact breached his duties by failing to ensure that maintenance was performed during his tenure as President of the DEVELOPER controlled board.

92. In such event, BINES' breached his fiduciary duties, which has caused and will continue to cause, damage to the Townhomes, including without limitation: water damage, property damage, and damages to the work and property of other persons or entities, thereby necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

93. These material breaches include the breaches of the duties of loyalty, fidelity, honesty, candor, fair dealing and full disclosure owed by BINES to the Association and its members.

94. As a direct and proximate result of BINES' breach of his fiduciary duties owed to the Association, the Association has suffered damages which have accrued and are continuing. The Association has been and will be required to expend significant sums of money to remedy



UNOFFICIAL

the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages in an amount to be determined at trial, are in excess of $30,000.00 and include but are not limited to the damages alleged in ¶ 63 above, as well as any amounts attributed on the verdict form to the Association for failed maintenance.

**WHEREFORE**, Plaintiff, GRANDE OAKS AT HEATHROW ASSOCIATION, INC., respectfully requests judgment against Defendant MARK BINES for damages including without limitation: the costs to repair the construction deficiencies, resulting damage from the construction deficiencies, and incidental and consequential damages, including without limitation: loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages; costs incurred to prosecute this lawsuit; pre-judgment interest; trial by jury; and any other such relief this Court deems just and proper.

**DEMAND FOR JURY TRIAL:**

Plaintiff demands a Jury Trial on all claims as a matter of right.

**BALL JANIK LLP**
By: */s/ Brett J. Roth, Esq.*
**Phillip E. Joseph**, FL Bar No. 1000368
**Evan J. Small**, FL Bar No. 57306
**Joseph R. Fitos,** FL Bar No. 745391
**Brett J. Roth**, FL Bar No. 102214
**Keegan A. Berry**, FL Bar No. 0106279
**Natalia A. Duran**, FL Bar No. 1019198
201 E Pine Street, Suite 600
Orlando, FL 32801
Telephone: (407) 455-5664
Facsimile: (407) 902-2105
pjoseph@balljanik.com
esmall@balljanik.com
jfitos@balljanik.com
broth@balljanik.com
kberry@balljanik.com
nduran@balljanik.com
pehlert@balljanik.com



UNOFFICIAL

cbetancourt@balljanik.com
bburton@balljanik.com
orlandodocket@balljanik.com

*Counsel for Plaintiff Grande Oaks at Heathrow Association, Inc.*

UNOFFICIAL