UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED SPECIALTY INSURANCE, a foreign entity; AMTRUST INTERNATIONAL UNDERWRITERS DAC, a foreign entity; REPUBLIC VANGUARD INSURANCE COMPANY, a foreign entity,

Case No.: 6:22-cv-1360-RBD-DCI

Plaintiffs,

vs.

KOLTER SIGNATURE HOMES, LLC, a Florida entity; KOLTER GROUP, LLC, a Florida entity; HEATHROW OAKS, LLC, a Florida entity, JOHN CSAPO, an individual; and GRANDE OAKS AT HEATHROW ASSOCIATION, INC., a Florida entity,

Defendants.
_____________________________________/

**AMENDED COMPLAINT FOR DECLARATORY RELIEF[1]**

Plaintiffs, United Specialty Insurance Company ("United"); AmTrust International Underwriters DAC ("AmTrust DAC"); and Republic Vanguard Insurance Company ("Republic") (collectively, "AmTrust Entities"), hereby sue Kolter Signature Homes, LLC ("Kolter Signature"), Kolter Group, LLC ("Kolter Group"), Heathrow Oaks, LLC ("Heathrow"), John Csapo (collectively, "the Kolter Entities"); and Grande Oaks at Heathrow Association, Inc. (the "Association") (collectively with the Insureds, the "Defendants") for declaratory relief, and states as follows:

[1] The Complaint has been amended pursuant this Court's order [D.E. 5].

## JURISDICTION AND VENUE

1. AmTrust Entities commence this action for the purpose of promoting the resolution of, and avoiding or reducing the need for the court's further involvement in, a lawsuit filed by the Association against the Kolter Entities in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, case styled Grande Oaks at Heathrow Association, Inc., v. Kolter Signature Homes, LLC, et al., Case No.: 2020-CA-003188, concerning construction defects to a townhouse development (the "Underlying Action"). Specifically, AmTrust entities bring this claim for declaratory relief, pursuant to 28 U.S.C. § 2201 and Florida Statute 86.011, to determine the actual controversy between the parties and the scope of AmTrust Entities' obligations, if any, to defend and indemnify Kolter Entities in connection with the Underlying Action.

2. Jurisdiction is proper because the citizenship of the parties, set forth below, satisfies diversity requirements, and the amount in controversy exceeds $75,000, exclusive of costs, attorney's fees, and interest. *See* 28 U.S.C. § 1332(a).

3. Venue is proper in the United States District Court for the Middle District of Florida because one or more defendants reside there, and the acts or omissions giving rise to the claims set forth below occurred there. *See* 28 U.S.C. § 1391.

## THE PARTIES

4. United is incorporated in Delaware with its principal place of business in Texas.

5. AmTrust DAC is incorporated in Ireland with its principal place of business in Ireland.

6. Republic is incorporated in Arizona with its principal place of business in New York.

7. Kolter Signature is a limited liability with its principal place of business in Palm Beach County, Florida. The members of Kolter Signature are Michael Clarke, Howard Erbstein, Robert Julien, Joseph Pease, Mr. Csapo—all of whom are citizens of Florida--and Kolter Group, whose members are Mr. Clarke, Mr. Erbstein, Mr. Julien, and William Johnson, all of whom are also citizens of Florida.

8. Kolter Group is a limited liability with its principal place of business in Palm Beach County, Florida. Kolter Group's members are Mr. Clarke, Mr. Erbstein, Mr. Julien, and Mr. Johnson, all of whom are citizens of Florida

9. Heathrow is a limited liability with its principal place of business in Palm Beach County, Florida. Heathrow's member is Kolter Group, whose members are Mr. Clarke, Mr. Erbstein, Mr. Julien, and Mr. Johnson, all of whom are citizens of Florida.

10. Mr. Csapo is an individual who resides in Palm Beach County, Florida, and is a citizen of Florida.

11. The Association is incorporated in Florida with its principal place of business in Seminole County, Florida.

## BACKGROUND FACTS

### *A. The Underlying Action*

12. On December 29, 2020, the Association filed suit against Kolter Signature, Heathrow, and Mr. Csapo for construction defects in a community, Grande Oaks at Heathrow (the "Project"), that the Kolter Entities constructed (the "Complaint"). **Exhibit A**.

13. The Project consisted of the construction of 314 townhomes in 52 buildings, which spanned over the course of over a decade. According to the Complaint, construction commenced in 2006 and then halted due to the market crash. The Project was completed in 2019.

14. The Complaint also sets forth allegations against some of Kolter Signature's subcontractors for the Project.

15. Specifically, the Association set forth claims for breach of Florida Building Code, breach of implied warranty, deceptive and unfair trade practices, and negligence against Kolter Signature as the builder and licensed general contractor, Heathrow as the developer, and John Csapo as certified general contractor.

16. The Complaint alleges construction defects with the Project, including issues with the (a) stucco and weather resistive barriers; (b) exterior paint, caulk, and sealants; (c) framing, zip sheathing, and shear walls; (d) window installation and flashing; (e) roofs; and (f) balconies. Ex. A, ¶ 225.

17. Specifically, the Complaint sets forth the following claims:

a. Against Kolter Signature: Count I for violation of the Florida Building Code, Count II for negligence and vicarious liability from its subcontractors; and Count III for unfair and deceptive trade practices for marketing defect free townhomes, which allegedly are defective.

b. Against Heathrow: Count III for unfair and deceptive trade practices, based on the same allegations stated above relating to Kolter Signature; Count IV for violations of the Florida Building Codes; and Count V for negligence and vicarious liability from its subcontractors; Count V for unfair and deceptive trade practices for marketing defect free townhomes, which allegedly are defective; and Count VI for breach of implied warranty.

c. As against Mr. Csapo: Count VII for violation of Florida Building Codes and Count VIII for negligence and vicarious liability.

18. The Complaint alleges that "[a]t all times material hereto, all of the defects, deficiencies, and building code violations were or should have been known to the Defendants." Ex. A., ¶ 227.

19. As it relates to Count III, deceptive and unfair trade practices ("FDUTPA"), the Association alleges that Kolter Signature and Heathrow directed and/or approved work performed by its subcontractors that Kolter Signature and Heathrow knew was in violation of building codes, and then denied warranty repair requests based on lack of homeowner maintenance. *Id.* at ¶ 255.

20. The Complaint continues:

> d. KOLTER knew that the Townhomes suffered from construction deficiencies, water intrusion issues, and other substantial defects that, if known, the Association's members would not have purchased a home for the full price or would not have purchased a unit at all;…

*Id.*

21. Yet, according to the Complaint, Kolter Signature continued to market the townhomes as "maintenance free."

22. The Complaint alleges that Kolter and Heathrow took these actions "in an effort to maximize profits, place profits over the health, welfare, and safety of its consumers, and solely out of corporate greed and self-interest as it knew it would be unable to sell the Townhomes to consumers had it disclosed the substantial construction deficiencies." *Id.* at ¶ 258.

23. On February 22, 2021, Kolter Signature, Heathrow, and Mr. Csapo filed a crossclaim against its subcontractors on the Project seeking contractual indemnity. **Exhibit B.**

24. On March 10, 2022—after over a year of litigation in the Underlying Action—the Association filed a separate lawsuit against Kolter Group, raising the same claims asserted against Kolter Signature in the Underlying Action (the "Kolter Group Complaint"). **Exhibit C**.[2]

25. On May 31, 2022, the Association and Kolter Group moved to consolidate the separate action against Kolter Group with the Underlying Action, and on the same day the underlying court entered an order consolidating the two matters.

26. In the Kolter Group Complaint, the Association set forth allegations that Kolter Group owned, manager, or otherwise controlled Kolter Signature and Heathrow and, thus, they are all related entities. According to the Kolter Group Complaint, Kolter Signature, Heathrow, under the direct control of Kolter Group, worked together to serve as conduits for each other, forming a joint enterprise or joint venture between the three entities. Additionally, the Kolter Group Complaint alleges that Mr. Csapo, the qualifying agent for Kolter, is an employee of the Kolter Group.

27. The Kolter Group Complaint mirrors the allegations contained in the Complaint regarding the construction defects and damages at the Project. Ex. C., ¶ 225.

28. In the Kolter Group Complaint, the Association brings the following counts against Kolter Group: Count I for deceptive and unfair trade practices; Count II for violation of Florida Building;[3] and Count III for negligence and vicarious liability.

---

[2] The complaint against Kolter Group originally set forth claims against Mark Bines; however, the Association later dismissed those claims.

[3] This Count asserts that Kolter Group is the direct employer of Mr. Csapo, Joseph John Pease, Miguel Arceses; Alissa Bennett; Bines; Mario Manza; Steve Bovio; James Wait; Kevin Morrissey; Emily Vaugn; Dana Chris Olsen; Jennifer (Wallace) Pepe; and Budget (Stevens) Mockler—many of which have been deposed in the Related Litigation.

29. On June 20, 2022, after the cases were consolidated in the Underling Action, Kolter Group filed a crossclaim against a number of subcontractors. **Exhibit D**.

30. On April 6, 2022, the Association filed a motion for leave to seek punitive damages. **Exhibit E**.

31. In the motion, the Association alleges that Kolter, Heathrow, and Mr. Csapo: (i) knowingly violated the Florida Building Code; (ii) explicitly instructed its subcontractors to violate the Florida Building Code, (iii) knowingly sold units that contained violations of the Florida Building Code without disclosing defects and marketed them as "maintenance free," (iv) failed to inform the Association of critical life-safety warnings Kolter received, (v) attempted to bury damaging evidence by making false representations to the Association, and (vi) filed false affidavits to attempt to hide damaging emails as work product.

32. To support this theory, the Association, in part, relies on two failed inspections—one on January 26, 2015, and another on February 26, 2016—in which Seminole County advised Kolter Entities of code violations, along with testimony that Kolter Entities did not go back to previously constructed buildings to correct those issues.

33. To date, the underlying court has not ruled on the motion for leave and, accordingly, the allegations raised in the Complaint and Kolter Group Complaint remain operative.[4]

***B. The Policies***

34. United issued three policies to the Kolter Entities: (1) policy number ISC0001150, with the effective dates of October 1, 2010, through October 1, 2011, with applicable policy limits of $2,000,000 (**Exhibit F**); (2) policy number ISC0002214, with the effective dates of October 1,

---

[4] Collectively, the Complaint and Kolter Group Complaint shall be referenced to as the "Complaints."

2011, through October 1, 2012, with applicable policy limits of $2,000,000 (**Exhibit G**); (3) policy number ISC0002295, with the effective dates of October 1, 2012, through October 1, 2013, with applicable policy limits of $2,000,000 (**Exhibit H**).

35. AmTrust DAC issued the following policies to Kolter Entities: (1) policy number PAL1043942-00, with effective dates of October 1, 2013, through October 1, 2014, with applicable policy limits of $3,000,000 (**Exhibit I**); (2) policy number PAL1053270-00, with effective dates of October 1, 2014, through October 1, 2015, with applicable policy limits of $3,000,000 (**Exhibit J**); (3) policy number PAL1255637-00, with effective dates of October 1, 2015, through October 1, 2016, with applicable policy limits of $5,000,000 (**Exhibit K**); (4) policy number PAL1271616-00, with effective dates of October 1, 2016, through October 1, 2017, with applicable policy limits of $5,000,000 (**Exhibit L**); (5) policy number PAL1272757-00, with effective dates of October 1, 2017, through October 1, 2018, with applicable policy limits of $5,000,000 (**Exhibit M**); and (6) policy number PAL1276521-00, with effective dates of October 1, 2018, through October 1, 2019, with applicable policy limits of $5,000,000 (**Exhibit N**).

36. Republic issued policy number RVA1008332-00 to Kolter Entities, with effective dates of October 1, 2019, through October 1, 2020, with applicable policy limits of $3,000,000. **Exhibit O**.

37. The Policies all contain the following insuring agreement provision:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury"

or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medi-cal expenses under Coverage C.

* * *

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

* * *

**SECTION V - DEFINITIONS**

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**…**

**17.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

38. The Policies also contain a number of provisions that would preclude or limit coverage under the policies, as outlined in the counts below. Specifically, the Policies do not provide coverage for damages that Kolter Entities expected and/or had knowledge of.

39. AmTrust Entities issued reservation of rights letters in connection with the Underlying Action.

40. In addition to AmTrust Entities' defense obligations being at-issue in the Underlying Action, all parties will be in a better position to engage in settlement negotiations after a decision has been rendered as to AmTrust Entities' indemnity obligation. Thus, a prompt resolution thereof will facilitate the prospects of settling the Underlying Action, and avoid or reduce the need for the court's further involvement in the same.

41. Likewise, a prompt resolution of this claim for declaratory relief will avoid the probable need for post-judgment court involvement. Specifically, without first determining AmTrust Entities' coverage obligations, a determination of liability and the entry of a damage award against Kolter Entities in the Underlying Action will likely require post-judgment litigation to determine if the judgment is covered under the policies.

42. While delaying resolution of this action will prejudice AmTrust Entities, no individual or entity will be prejudiced by a prompt determination of AmTrust Entities' coverage obligations.

## COUNT I – NO DUTY TO DEFEND FOR DAMAGE THAT DID NOT OCCUR DURING THE POLICY PERIODS

43. Paragraphs 1-29, and 34-42 are incorporated herein.

44. AmTrust Entities' duty to defend Kolter Entities, if any, is limited to those claims regarding property damage that took place during the policy period of the Policies.

45. The Complaints fail to mention when the alleged "property damage" occurred in the 52 buildings at the Project, the construction of which occurred over the period of a decade during periods of time when AmTrust Entities did not insure Kolter Entities.

46. The Policies state:

b. This insurance applies to "bodily injury" and "property damage" only if:
   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
   (2) The "bodily injury" or "property damage" occurs during the policy period; and

47. As the damage alleged in the Underlying Action did not take place during some or all of the Policies' periods, AmTrust Entities have no duty to defend Kolter Entities against claims seeking such damage.

48. Further, AmTrust Entities are in doubt as to their rights and obligations under the Policies, including which policies the alleged "property damage" occurred during, if any.

49. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities because the alleged damage did not take place during the policy periods of the Policies would promote the resolution of the Underlying Action.

50. Whether or not damage sought in the Underlying Action occurred during the policy periods of the Policies is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities against any claim for damage that took place outside of the policy periods would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

51. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities under the Policies against the claims made in the Underlying Action.

WHEREFORE, AmTrust Entities request that this Court find and declare that AmTrust Entities are not obligated under the Policies to Kolter Entities against the claims brought in the Underlying Action for damage that did not take place during the policy periods of the Policies.

**COUNT II – NO DUTY TO INDEMNIFY FOR DAMAGE THAT DID NOT OCCUR DURING THE POLICY PERIODS**

52. Paragraphs 1-42 above are incorporated herein.

53. Kolter Entities seeking indemnity from AmTrust Entities for damages alleged in the Underling Action under the Policies.

54. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, is limited to those claims regarding property damage that took place during the policy period of the Policies.

55. The Association fails to allege, nor has it made clear through discovery, when the alleged "property damage" occurred in the 52 buildings at the Project, the construction of which occurred over the period of a decade during periods of time when AmTrust Entities did not insure Kolter Entities.

56. The Policies state:

> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period; and

57. As the damage alleged in the Underlying Action did not take place during some or all of the Policies' periods, AmTrust Entities have no duty to indemnify Kolter Entities against claims seeking such damage.

58. Further, AmTrust Entities are in doubt as to their rights and obligations under the Policies, including which policies the alleged "property damage" occurred during, if any.

59. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities because the alleged damage did not take place during the policy periods

of the Policies would promote the resolution of the Underlying Action.

60. Whether or not damage sought in the Underlying Action occurred during the policy periods of the Policies is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities against any claim for damage that took place outside of the policy periods would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

61. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnify Kolter Entities under the Policies against the claims made in the Underlying Action.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities are not obligated under the Policies to indemnify Kolter Entities against the claims brought in the Underlying Action for damage that did not take place during the policy periods of the Policies.

**COUNT III – NO DUTY TO DEFEND FOR DAMAGE THAT DOES NOT CONSTITUTE PROPERTY DAMAGE**

62. Paragraphs 1-29, and 34-42 above are here incorporated.

63. The Complaints set forth claims against Kolter Entities for cost of repair and reconstruction due to its allegedly defective work.

64. Costs incurred due to Kolter's defective work does not constitute "property damage" under the Policies.

65. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for damage that does not constitute "property damage" under the Policies

would promote the resolution of the Underlying Action.

66. Whether or not damage sought in the Underlying Action constitutes "property damage" under the Policies is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for any damage that does not constitute "property damage" would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

67. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities against claims made in the Underlying Action for damage that did not constitute "property damage" under the Policies.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to defend Kolter Entities in the Underlying Action for any damage that does not constitute "property damage" under the Policies.

## COUNT IV – NO DUTY TO INDEMNIFY FOR DAMAGE THAT DOES NOT CONSTITUTE PROPERTY DAMAGE

68. Paragraphs 1-42 above are here incorporated.

69. Kolter Entities are seeking indemnity from AmTrust Entities for damages alleged in the Underling Action under the Policies.

70. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust's duty to indemnify Kolter Entities, if any, are limited to claims resulting in "property damage" under the Policies.

71. The Complaints set forth claims against Kolter Entities for cost of repair and reconstruction due to its defective work.

72. Costs incurred due to Kolter Entities' defective work does not constitute "property damage" under the Policies.

73. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damage that does not constitute "property damage" under the Policies would promote the resolution of the Underlying Action.

74. Whether or not damage sought in the Underlying Action constitutes "property damage" under the Policies is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for any damage that did not constitute "property damage" would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

75. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to identify Kolter Entities under the Policies against claims made in the Underlying Action for damage that did not constitute "property damage" under the Policies.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage that did not constitute "property damage" under the Policies.

**COUNT V – NO DUTY TO DEFEND FOR DAMAGE NOT CAUSED BY AN OCCURRENCE**

76. Paragraphs 1-29, and 34-42 above are here incorporated.

77. The Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

78. The Complaints set forth allegations that Kolter Entities were or should have known about the construction defects at the Project. Ex. A., ¶ 27.

79. Specifically, the Complaints set forth allegations that the Kolter Entities:

(i) directed and/or approved work performed by its subcontractors that Kolter Signature and Heathrow knew was in violation of building codes, and then denied warranty repair requests based on lack of homeowner maintenance. *Id.* at ¶ 255.

(ii) knew that the Project suffered from construction deficiencies, including water intrusion issues, yet marketed the townhomes as "maintenance free." *Id.*

(iii) engaged in a scheme to maximize profits by concealing defects from consumers. *Id.* at ¶ 258.

80. The Policies provide a duty to defend for damages arising out of property damage caused by an "occurrence."

81. Damages arising from Kolter Entities' actions that were intentional or not an "accident" do not constitute an "occurrence" under the Policies.

82. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for damage that was not caused by an "occurrence" under the Policies would promote the resolution of the Underlying Action.

83. Whether or not damage sought in the Underlying Action was caused by an "occurrence" under the Policies is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities

for any damage not caused by an "occurrence" would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

84. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities under the Policies against claims made in the Underlying Action for damage that was not caused by an "occurrence" under the Policies.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to defend Kolter Entities in the Underlying Action for any damage not caused by an "occurrence" Policies.

**COUNT VI – NO DUTY TO INDEMNIFY FOR DAMAGE NOT CAUSED BY AN OCCURRENCE**

85. Paragraphs 1-42 above are here incorporated.

86. Kolter Entities seek indemnity under the Policies in connection with the Underlying Action.

87. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited to "property damage" caused by an "occurrence."

88. The Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

89. The Complaints set forth allegations that Kolter Entities were or should have known about the construction defects at the Project. Ex. A., ¶ 27.

90. Specifically, the Complaints set forth allegations that the Kolter Entities:

(i) directed and/or approved work performed by their subcontractors that Kolter Signature and Heathrow knew was in violation of building codes, and then denied warranty repair requests based on lack of homeowner maintenance. *Id.* at ¶ 255.

(ii) knew that the Project suffered from construction deficiencies, including water intrusion issues, yet marketed the townhomes as "maintenance free." *Id.*

(iii) engaged in a scheme to maximize profits by concealing defects from consumers. *Id.* at ¶ 258.

91. Further, the Association's theory of liability against the Kolter Entities, based on discovery in the Underlying Action, is that the Kolter Entities were aware of Florida Building Code violations and, nonetheless, proceeded with selling townhomes without correcting said issues.

92. The Policies provide coverage for damages arising out of property damage caused by an "occurrence."

93. Damages arising from Kolter Entities' actions that were intentional or not an "accident" do not constitute an "occurrence" under the Policies.

94. AmTrust Entities are in doubt as to their obligations under the Policies as to whether the allegations constitute an "occurrence" given the allegedly intentional conduct.

95. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damage that was not caused by an "occurrence" under the Policies would promote the resolution of the Underlying Action.

96. Whether or not damage sought in the Underlying Action was caused by an "occurrence" under the Policies is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities is not obligated to indemnify Kolter Entities for any damage not caused by an "occurrence" would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

97. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnify Kolter Entities against claims made in the Underlying Action for damage that was not caused by an "occurrence" under the Policy.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage not caused by an "occurrence".

**COUNT VII – NO DUTY TO DEFEND FOR EXPECTED OR INTENDED INJURY**

98. Paragraphs 1-29, and 34-42 above are here incorporated.

99. The Policies contain an exclusion for "property damage" that was "expected or intended from the standpoint of the insured."

100. The Complaints set forth allegations that Kolter Entities were or should have known about the construction defects at the Project. Ex. A., ¶ 27. Specifically, the Complaints set forth allegations that the Kolter Entities:

(i) directed and/or approved work performed by their subcontractors that Kolter Signature and Heathrow knew was in violation of building codes, and then

denied warranty repair requests based on lack of homeowner maintenance. *Id.* at ¶ 255.

(ii) knew that the Project suffered from construction deficiencies, including water intrusion issues, yet marketed the townhomes as "maintenance free." *Id.*

(iii) engaged in a scheme to maximize profits by concealing defects from consumers. *Id.* at ¶ 258.

101. Damages that were expected or intended by Kolter Entities are not covered under the Policies.

102. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for damages that were expected or intended would promote the resolution of the Underlying Action.

103. Whether or not damage sought in the Underlying Action was expected or intended is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for any damage that was expected or intended by Kolter Entities would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

104. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities under the Policies against claims made in the Underlying Action for damage that was expected or intended by Kolter Entities.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to defend Kolter Entities in the Underlying Action for any damage that was expected or intended by Kolter Entities.

**COUNT VIII – NO DUTY TO INDEMNIFY FOR EXPECTED OR INTENDED INJURY**

105. Paragraphs 1-42 above are here incorporated.

106. Kolter Entities seek indemnity from AmTrust Entities in connection with the Underlying Action.

107. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited by exclusions in the Policies, including the "Expected or Intended Injury" exclusion.

108. The Policies contains an exclusion for "property damage" that was "expected or intended from the standpoint of the insured."

109. The Complaints set forth allegations that Kolter Entities were or should have known about the construction defects at the Project. Ex. A., ¶ 27. Specifically, the Complaints set forth allegations that the Kolter Entities:

(i) directed and/or approved work performed by its subcontractors that Kolter Signature and Heathrow knew was in violation of building codes, and then denied warranty repair requests based on lack of homeowner maintenance. *Id.* at ¶ 255.

(ii) knew that the Project suffered from construction deficiencies, including water intrusion issues, yet marketed the townhomes as "maintenance free." *Id.*

(iii) engaged in a scheme to maximize profits by concealing defects from consumers. *Id.* at ¶ 258.

110. Further, the Association's theory of liability against the Kolter Entities, based on discovery in the Underlying Action, is that the Kolter Entities were aware of Florida Building Code violations and, nonetheless, proceeded with selling townhomes without correcting said issues.

111. Damages that were expected or intended by Kolter Entities are not covered under the Policies.

112. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damages that were expected or intended would promote the resolution of the Underlying Action.

113. Whether or not damage sought in the Underlying Action was expected or intended is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for any damage that was expected or intended by Kolter Entities would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

114. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnify Kolter Entities under the Policies against claims made in the Underlying Action for damage that was expected or intended by Kolter Entities.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage that was expected or intended by Kolter Entities.

**COUNT IX – NO DUTY TO DEFEND UNDER "DAMAGE TO PROPERTY" EXCLUSION**

115. Paragraphs 1-29, and 34-42 above are here incorporated.

116. The Policies contain an exclusion for "Damage to Property" which states:

**j. Damage To Property**

"Property damage" to:

…

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard"

117. The Complaints set forth claims against Kolter Entities for cost of repair and reconstruction due to its allegedly defective work.

118. Damage to the particular part of the property that Kolter Entities or its subcontractors were performing operations or the particular part of the property that must be restored, repaired, or replaced due to Kolter Entities' incorrectly performed work are not covered by the Policies.

119. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for damages that fall under the "Damage to Property" exclusion would promote the resolution of the Underlying Action.

120. Whether or not damage sought in the Underlying Action are for the part of the property that Kolter Entities performed operations or that would otherwise fall under the "Damage to Property" exclusion is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for any such damage would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

121. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities under the Policies against claims made in the Underlying Action for damage to property arising from Kolter Entities' operations or defective work under the "Damage to Property" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to defend Kolter Entities in the Underlying Action for any damage that would fall under the "Damage to Property" exclusion.

**COUNT X – NO DUTY TO INDEMNIFY UNDER "DAMAGE TO PROPERTY" EXCLUSION**

122. Paragraphs 1-42 above are here incorporated.

123. Kolter Entities seek indemnity from AmTrust Entities under the Policies for the Underlying Action.

124. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited to by exclusions in the Policies, including the "Damage to Property" exclusion.

125. The Policies contain an exclusion for "Damage to Property" which states:

**j. Damage To Property**

"Property damage" to:

…

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard"

126. The Complaints set forth claims against Kolter Entities for cost of repair and reconstruction due to its allegedly defective work.

127. Damage to the particular part of the property that Kolter Entities or its subcontractors were performing operations or the particular part of the property that must be restored, repaired, or replaced due to Kolter Entities' incorrectly performed work are not covered by the Policies.

128. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damages that fall under the "Damage to Property" exclusion would promote the resolution of the Underlying Action.

129. Whether or not damages sought in the Underlying Action are for the part of the property that Kolter Entities performed operations or that would otherwise fall under the "Damage to Property" exclusion is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for any such damage would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment

adjudications.

130. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnify Kolter Entities under the Policies against claims made in the Underlying Action for damage to property arising from Kolter Entities' operations or defective work under the "Damage to Property" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage that would fall under the "Damage to Property" exclusion.

**COUNT XI – NO DUTY TO DEFEND UNDER "DAMAGE TO YOUR WORK" EXCLUSION**

131. Paragraphs 1-29, and 34-42 above are here incorporated.

132. The Policies contain an exclusion for "Damage To Your Work" which states:

**2. Exclusions**
**This insurance does not apply to:**
* * *

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

* * *

**SECTION V - DEFINITIONS**

* * *

"Your work":

a. Means:
(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes :

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
(2) The providing of or failure to provide warnings or instructions.

133. The Complaints set forth claims against Kolter Entities for cost of repair and reconstruction due to the Kolter Entities' allegedly defective work.

134. The Policies do not cover damages to Kolter Entities' work or operations performed on Kolter Entities behalf.

135. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for damages that fall under the "Damage To Your Work" exclusion would promote the resolution of the Underlying Action.

136. Whether or not damage sought in the Underlying Action are for work performed by Kolter Entities or that would otherwise fall under the "Damage To Your Work" exclusion is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for any such damage would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

137. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities under the Policies against claims made in the Underlying Action for damage to property arising from Kolter Entities' work under the "Damage To Your Work" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to defend Kolter Entities in the Underlying Action for any damage that would fall under the "Damage To Your Work" exclusion.

## COUNT XII – NO DUTY TO INDEMNIFY UNDER "DAMAGE TO YOUR WORK" EXCLUSION

138. Paragraphs 1-42 above are here incorporated.

139. Kolter Entities seek indemnity from AmTrust Entities under the Policies for the Underlying Action.

140. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited to by exclusions in the Policies, including the "Damage To Your Work" exclusion.

141. The Policies contain an exclusion for "Damage To Your Work" which states:

> **2. Exclusions**
> **This insurance does not apply to:**
> * * *
>
> **l. Damage To Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
>
> * * *
>
> **SECTION V - DEFINITIONS**
>
> * * *
>
> "Your work":
> a. Means:
> (1) Work or operations performed by you or on your behalf; and
> (2) Materials, parts or equipment furnished in connection with such work or operations.
> b. Includes :
> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
> (2) The providing of or failure to provide warnings or instructions.

142. The Complaints set forth claims against Kolter Entities for cost of repair and reconstruction due to the Kolter Entities' allegedly defective work.

143. The Policies do not cover damages to Kolter Entities' work or operations performed on Kolter Entities behalf.

144. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damages that fall under the "Damage To Your Work" exclusion would promote the resolution of the Underlying Action.

145. Whether or not damage sought in the Underlying Action are for work performed by Kolter Entities or would otherwise fall under the "Damage To Your Work" exclusion is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for any such damage would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

146. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnify Kolter Entities under the Policies against claims made in the Underlying Action for damage to property arising from Kolter Entities' work under the "Damage To Your Work" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage that would fall under the "Damage To Your Work" exclusion.

**COUNT XIII – NO DUTY TO DEFEND UNDER DESIGNATED WORK EXCLUSION**

147. Paragraphs 1-29, and 34-42 above are here incorporated.

148. The Policies contain a "Designated Work Exclusion" which excludes coverage for the construction of certain buildings.

149. Under the United policies, spanning from 2010 to 2013, the "Designated Work Exclusion" precluded coverage for work performed on a "condominium project," "community apartment/co-operative project," and "commercial construction," as follows:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> **SCHEDULE**
>
> **Description of your work**:
>
> 1. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any part of a **"condominium project"** and/or **"community apartment/co-operative project" including its "common area(s)."**
>
>    a. For the purpose of this endorsement, **"condominium projects"** means: a development consisting of condominiums. A condominium consists of an undivided interest in common on a portion of real property coupled with a separate fee simple interest in a unit within such real property.
>    b. For the purpose of this endorsement **"community apartment/co-operative project"** means: a development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon.
>    c. For purposes of this endorsement **"common area(s)"** means: areas in common ownership and use by all resident of the planned community or as defined by state statutes, except any area with the development that is separately owned or operated by a homeowner's association, cooperative board or similar association.
>    d. For the purpose of this Schedule 1, the definition of "products-completed operations hazard" shall include only "occurrences" after the affected unit or "common area" is transferred to others.
>
> 2. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any "commercial construction".
>
>    a. For the purpose of this endorsement, **"commercial construction"** means: any structure whose intended commercial use is greater than 15,000 square feet or greater than two (2) stories above garage level.
>
>       However, **"commercial construction"** shall not mean: non-revenue generating structures, building and common areas, within a residential community or development, used solely by the common residents of that community (and their invited guests). Examples of

such non – revenue generating structures include guard houses, club houses (including incidental exercise facilities of less than 500 sq. ft.), pump houses, gazebos, and the like.

3. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (3) stories above garage level and exceeds twelve (12) units per building.

4. Any demolition exposures arising out of the design, manufacture, construction, fabrication, maintenance, remodeling, service, correction, or replacement of any part or in any phase of any type of project.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operation hazard" and arising out of "your work" shown in the Schedule.

150. For the 2013-2014 Policy and the 2014-2015 Policy, issued by AmTrust, the Designated Work Exclusion reads as follows:

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work**:

1. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any part of a **"community apartment/co-operative project."**

    a. For the purpose of this endorsement **"community apartment/co-operative project"** means: a development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon.

2. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any "commercial construction".

    a. For the purpose of this endorsement, **"commercial construction"** means: any structure whose intended commercial use is greater than 15,000 square feet or greater than two (2) stories above garage level.

However, **"commercial construction"** shall not mean: non-revenue generating structures, building and common areas, within a residential community or development, used solely by the common residents of that community (and their invited guests). Examples of such non – revenue generating structures include guard houses, club houses (including incidental exercise facilities of less than 500 sq. ft.), pump houses, gazebos, and the like.

3. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (3) stories above garage level and exceeds twelve (12) units per building.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operation hazard" and arising out of "your work" shown in the Schedule.

151. The AmTrust DAC policy with for 2015-2016 contains a similar exclusion, which states:

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work**:

1. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any part of a **"condominium project"** and/or **"community apartment/co-operative project" including its "common area(s)."**

a. For the purpose of this endorsement, **"condominium projects"** means: a development consisting of condominiums. A condominium consists of an undivided interest in common on a portion of real property coupled with a separate fee simple interest in a unit within such real property.
b. For the purpose of this endorsement **"community apartment/co-operative project"** means: a development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon.
c. For purposes of this endorsement **"common area(s)"** means: areas in common ownership and use by all resident of the planned community or as defined by state statutes, except any area with the development

that is separately owned or operated by a homeowner's association, cooperative board or similar association.

d. For the purpose of this Schedule 1, the definition of "products-completed operations hazard" shall include only "occurrences" after the affected unit or "common area" is transferred to others.

Item #1 above does not apply to premises liability coverage inside the walls of individually owned condominium units that are within projects completed by a named insured and where a project-specific or wrap policy is no longer in-force. Coverage under this policy extends to onsite sales offices operated by a named insured. Premise liability for common areas of a condominium project is excluded.

2. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any "commercial construction".

a. For the purpose of this endorsement, **"commercial construction"** means: any structure whose intended commercial use is greater than 15,000 square feet or greater than two (2) stories above garage level.

However, **"commercial construction"** shall not mean: non-revenue generating structures, building and common areas, within a residential community or development, used solely by the common residents of that community (and their invited guests). Examples of such non – revenue generating structures include guard houses, club houses (including incidental exercise facilities of less than 500 sq. ft.), pump houses, gazebos, and the like.

3. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (3) stories above garage level and exceeds twelve (12) units per building.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operation hazard" and arising out of "your work" shown in the Schedule.

152. The AmTrust DAC 2016-2017 and 2017-2018 policies contain the following "Designated Work Exclusion":

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work**:

1. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any part of **"community apartment/co-operative project" including its "common area(s)."**

    a. For the purpose of this endorsement **"community apartment/co-operative project"** means: a development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon.
    b. For purposes of this endorsement **"common area(s)"** means: areas in common ownership and use by all resident of the planned community or as defined by state statutes, except any area with the development that is separately owned or operated by a homeowner's association, cooperative board or similar association.
    c. For the purpose of this Schedule 1, the definition of "products-completed operations hazard" shall include only "occurrences" after the affected unit or "common area" is transferred to others.

2. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any "commercial construction".

    a. For the purpose of this endorsement, **"commercial construction"** means: any structure that is zoned as commercial, other than non-revenue generating structures, buildings and common areas, within a residential community or development, used solely by the common residents of that community (and their invited guests). Examples of such non – revenue generating structures include guard houses, club houses (including incidental exercise facilities of less than 500 sq. ft.), pump houses, gazebos, and the like.

3. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (3) stories above garage level and exceeds twelve (12) units per building.

4. All work zoned as a condominium that was completed prior to 10/1/2016.

5. Sections 1 and 4 of this endorsement do not apply to land zoned for condominium construction prior to the construction process beginning but it does apply once construction has started. Sections 1 and 4 of this endorsement also do

not apply to premises liability exposure related to individually owned condominium units while they are held for sale.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operation hazard" and arising out of "your work" shown in the Schedule.

153. The 2018-2019 AmTrust DAC policy contains a similar exclusion:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work**:
-Absolute Commercial Exclusion
-Absolute Apartment Exclusion
-Exclusion for work performed on structures that exceed 3 stories above garage level or 12 units per foundation
(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

154. The final policy, issued by Republic, contains a similar exclusion, as well, which states:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work**:
(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operation hazard" and arising out of "your work" shown in the Schedule.

155. The Complaints set forth allegations against Kolter Entities for construction defects

to the Project, which consists of 52 townhomes in a community.

156. AmTrust Entities are in doubt as to their rights and obligations under the Policies, including whether the townhomes and Project fall within the "Designated Work Exclusion."

157. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for allegations that fall within the "Designated Work Exclusion" would promote the resolution of the Underlying Action.

158. Whether or not damage sought in the Underlying Action fall within the "Designated Work Exclusion" is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for any damage that fall within the "Designated Work Exclusion" would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

159. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities under the Policies against claims made in the Underlying Action for damage that fall within the "Designated Work Exclusion."

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to defend Kolter Entities in the Underlying Action for any damage that fall within the "Designated Work Exclusion."

**COUNT XIV – NO DUTY TO INDEMNIFY UNDER DESIGNATED WORK EXCLUSION**

160. Paragraphs 1-29, and 34-42 above are here incorporated.

161. Kolter Entities seek indemnity from AmTrust Entities in connection with the

Underlying Action.

162. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited to by exclusions in the Policies, including the "Designated Work Exclusion."

163. Under the United policies, spanning from 2010 to 2013, the "Designated Work Exclusion" precluded coverage for work performed on a "condominium project," "community apartment/co-operative project," and "commercial construction," as follows:

> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> **SCHEDULE**
>
> **Description of your work**:
>
> 1. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any part of a **"condominium project"** and/or **"community apartment/co-operative project" including its "common area(s)."**
>
>     e. For the purpose of this endorsement, **"condominium projects"** means: a development consisting of condominiums. A condominium consists of an undivided interest in common on a portion of real property coupled with a separate fee simple interest in a unit within such real property.
>
>     f. For the purpose of this endorsement **"community apartment/co-operative project"** means: a development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon.
>
>     g. For purposes of this endorsement **"common area(s)"** means: areas in common ownership and use by all resident of the planned community or as defined by state statutes, except any area with the development that is separately owned or operated by a homeowner's association, cooperative board or similar association.
>
>     h. For the purpose of this Schedule 1, the definition of "products-completed operations hazard" shall include only "occurrences" after the affected unit or "common area" is transferred to others.

2. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any "commercial construction".

a. For the purpose of this endorsement, **"commercial construction"** means: any structure whose intended commercial use is greater than 15,000 square feet or greater than two (2) stories above garage level.

However, **"commercial construction"** shall not mean: non-revenue generating structures, building and common areas, within a residential community or development, used solely by the common residents of that community (and their invited guests). Examples of such non – revenue generating structures include guard houses, club houses (including incidental exercise facilities of less than 500 sq. ft.), pump houses, gazebos, and the like.

3. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (3) stories above garage level and exceeds twelve (12) units per building.

4. Any demolition exposures arising out of the design, manufacture, construction, fabrication, maintenance, remodeling, service, correction, or replacement of any part or in any phase of any type of project.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operation hazard" and arising out of "your work" shown in the Schedule.

164. For the 2013-2014 Policy and the 2014-2015 Policy, issued by AmTrust, the Designated Work Exclusion reads as follows:

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work**:
1. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any part of a **"community apartment/co-operative project."**

a. For the purpose of this endorsement **"community apartment/co-operative project"** means: a development in which an undivided

interest in land is coupled with the right of exclusive occupancy of any apartment located thereon.

2. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any "commercial construction".

b. For the purpose of this endorsement, **"commercial construction"** means: any structure whose intended commercial use is greater than 15,000 square feet or greater than two (2) stories above garage level.

However, **"commercial construction"** shall not mean: non-revenue generating structures, building and common areas, within a residential community or development, used solely by the common residents of that community (and their invited guests). Examples of such non – revenue generating structures include guard houses, club houses (including incidental exercise facilities of less than 500 sq. ft.), pump houses, gazebos, and the like.

3. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (3) stories above garage level and exceeds twelve (12) units per building.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operation hazard" and arising out of "your work" shown in the Schedule.

165. The AmTrust DAC policy with for 2015-2016 contains a similar exclusion, which states:

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work**:

1. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any part of a **"condominium project"** and/or **"community apartment/co-operative project" including its "common area(s)."**

a. For the purpose of this endorsement, **"condominium projects"** means: a development consisting of condominiums. A condominium consists of an undivided interest in common on a portion of real property coupled with a separate fee simple interest in a unit within such real property.
b. For the purpose of this endorsement **"community apartment/co-operative project"** means: a development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon.
c. For purposes of this endorsement **"common area(s)"** means: areas in common ownership and use by all resident of the planned community or as defined by state statutes, except any area with the development that is separately owned or operated by a homeowner's association, cooperative board or similar association.
d. For the purpose of this Schedule 1, the definition of "products-completed operations hazard" shall include only "occurrences" after the affected unit or "common area" is transferred to others.

Item #1 above does not apply to premises liability coverage inside the walls of individually owned condominium units that are within projects completed by a named insured and where a project-specific or wrap policy is no longer in-force. Coverage under this policy extends to onsite sales offices operated by a named insured. Premise liability for common areas of a condominium project is excluded.

2. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any "commercial construction".

a. For the purpose of this endorsement, **"commercial construction"** means: any structure whose intended commercial use is greater than 15,000 square feet or greater than two (2) stories above garage level.

However, **"commercial construction"** shall not mean: non-revenue generating structures, building and common areas, within a residential community or development, used solely by the common residents of that community (and their invited guests). Examples of such non – revenue generating structures include guard houses, club houses (including incidental exercise facilities of less than 500 sq. ft.), pump houses, gazebos, and the like.

3. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (3) stories above garage level and exceeds twelve (12) units per building.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operation hazard" and arising out of "your work" shown in the Schedule.

166. The AmTrust DAC 2016-2017 and 2017-2018 policies contain the following "Designated Work Exclusion":

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work**:

1. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any part of **"community apartment/co-operative project" including its "common area(s)."**

    a. For the purpose of this endorsement **"community apartment/co-operative project"** means: a development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon.
    b. For purposes of this endorsement **"common area(s)"** means: areas in common ownership and use by all resident of the planned community or as defined by state statutes, except any area with the development that is separately owned or operated by a homeowner's association, cooperative board or similar association.
    c. For the purpose of this Schedule 1, the definition of "products-completed operations hazard" shall include only "occurrences" after the affected unit or "common area" is transferred to others.

2. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any "commercial construction".

    a. For the purpose of this endorsement, **"commercial construction"** means: any structure that is zoned as commercial, other than non-revenue generating structures, buildings and common areas, within a residential community or development, used solely by the common residents of that community (and their invited guests). Examples of such non – revenue generating structures include guard houses, club houses (including incidental exercise facilities of less than 500 sq. ft.), pump houses, gazebos, and the like.

3. Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (3) stories above garage level and exceeds twelve (12) units per building.

4. All work zoned as a condominium that was completed prior to 10/1/2016.

5. Sections 1 and 4 of this endorsement do not apply to land zoned for condominium construction prior to the construction process beginning but it does apply once construction has started. Sections 1 and 4 of this endorsement also do not apply to premises liability exposure related to individually owned condominium units while they are held for sale.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operation hazard" and arising out of "your work" shown in the Schedule.

167. The 2018-2019 AmTrust DAC policy contains a similar exclusion:

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work**:
-Absolute Commercial Exclusion
-Absolute Apartment Exclusion
-Exclusion for work performed on structures that exceed 3 stories above garage level or 12 units per foundation
(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

168. The final policy, issued by Republic, contains a similar exclusion, as well, which states:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work**:
(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operation hazard" and arising out of "your work" shown in the Schedule.

169. The Complaints set forth allegations against Kolter Entities for construction defects to the Project, which consists of 52 townhomes in a community.

170. AmTrust Entities are in doubt as to their rights and obligations under the Policies, including whether the townhomes and Project fall within the "Designated Work Exclusion."

171. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damages that fall within the "Designated Work Exclusion" would promote the resolution of the Underlying Action.

172. Whether or not damage sought in the Underlying Action fall within the "Designated Work Exclusion" is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for any damage that fall within the "Designated Work Exclusion" would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

173. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnify Kolter Entities under the Policies against claims made in the Underlying Action for damage that fall within the "Designated Work Exclusion."

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage that fall within the "Designated Work Exclusion."

**COUNT XV – NO DUTY TO DEFEND UNDER DESIGNATED ONGOING OPERATIONS EXCLUSION**

174. Paragraphs 1-29, and 34-42 above are here incorporated.

175. Some of the policies contains a "Designated Ongoing Operations" exclusion, which precludes coverage for certain ongoing operations.

176. The United policies contain the following endorsement:

**EXCLUSION - DESIGNATED ONGOING OPERATIONS**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Designated Ongoing Operation(s):**

Condominium Construction, Commercial Construction

**Specified Location (If Applicable):**
All Locations

(If no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

177. Additionally, the 2013-2014 and 2014-2015 AmTrust DAC policies contain the following similar endorsement:

**EXCLUSION - DESIGNATED ONGOING OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Designated Ongoing Operation(s):**

All condo development/construction and all commercial development/construction

**Specified Location (If Applicable):**
All applicable locations

(If no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

178. The Complaints set forth allegations against Kolter Entities for construction defects to the Project, which consists of 52 townhomes in a community.

179. AmTrust Entities are in doubt as to their rights and obligations under the Policies, including whether the townhomes and Project fall within the "Designated Ongoing Operations" exclusion.

180. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for damages that fall within the "Designated Ongoing Operations" exclusion would promote the resolution of the Underlying Action.

181. Whether or not damage sought in the Underlying Action fall within the "Designated Ongoing Operations" exclusion is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for any damage that fall within the "Designated Ongoing Operations" exclusion would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

182. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnify Kolter Entities under the policies against claims made in the Underlying Action for damage that fall within the "Designated Ongoing Operations" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to defend Kolter Entities in the Underlying Action for any damage that fall within the "Designated Ongoing Operations" exclusion.

**COUNT XVI – NO DUTY TO INDEMNIFY UNDER DESIGNATED ONGOING OPERATIONS EXCLUSION**

183. Paragraphs 1-29, and 34-42 above are here incorporated.

184. Kolter Entities seek indemnity from AmTrust Entities in connection with the

Underlying Action.

185. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited to by exclusions in the Policies, including the "Designated Ongoing Operations" exclusion.

186. Some of the policies contains a "Designated Ongoing Operations" exclusion, which precludes coverage for certain ongoing operations.

187. The United policies contain the following endorsement:

**EXCLUSION - DESIGNATED ONGOING OPERATIONS**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Designated Ongoing Operation(s):**
Condominium Construction, Commercial Construction

**Specified Location (If Applicable):**
All Locations

(If no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

188. Additionally, the 2013-2014 and 2014-2015 AmTrust DAC policies contain the following similar endorsement:

**EXCLUSION - DESIGNATED ONGOING OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Designated Ongoing Operation(s):**

All condo development/construction and all commercial development/construction

**Specified Location (If Applicable):**
All applicable locations

(If no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

189. The Complaints set forth allegations against Kolter Entities for construction defects to the Project, which consists of 52 townhomes in a community.

190. AmTrust Entities are in doubt as to their rights and obligations under the Policies, including whether the townhomes and Project fall within the "Designated Ongoing Operations" exclusion.

191. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damages that fall within the "Designated Ongoing Operations" exclusion would promote the resolution of the Underlying Action.

192. Whether or not damage sought in the Underlying Action fall within the "Designated Ongoing Operations" exclusion is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for any damage that fall within the "Designated Ongoing Operations" exclusion would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

193. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnify Kolter Entities under the policies against claims made in the Underlying Action for damage that fall within the "Designated Ongoing Operations" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage that fall within the "Designated Ongoing Operations" exclusion.

## COUNT XVII - NO DUTY TO DEFEND UNDER "PRIOR COMPLETED OPERATIONS" EXCLUSION

194. Paragraphs 1-29, and 34-42 above are here incorporated.

195. Some of the Policies contain a "Prior Completed Operations" Exclusion, which

limits or precludes coverage.

196. The United and 2018-2019 AmTrust DAC policies contains the following endorsement:

**PRIOR COMPLETED OPERATIONS EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

Completed Work Date: 11/01/2006

Section I - Coverages, Coverage A - Bodily Injury and Property Damage Liability, paragraph 2. Exclusions is amended to add the following:

This insurance does not apply to

Prior completed Operations

"Bodily Injury" or "Property Damage" resulting, directly or indirectly, and/or arising out of, in whole or in part, from "your work", which was completed prior to the inception date of this policy.

"Your Work" will be deemed completed at the earliest of the following times:

a. when all the work called for in your contract has been completed;
b. When all the work to be done at the job site has been completed if your contract calls for work at more than one job sites;
c. When a Certificate of Occupancy has been officially issued by a government authority,
d. When that part of the work done at a job site has been put to its intended use by any person or organization

Work that may need service, maintenance, correction, repair, or replacement on or after the inception date of this policy but is otherwise complete, will be deemed completed.

197. The 2019-2020 AmTrust DAC policies contain the following endorsement:

**PRIOR COMPLETED OPERATIONS EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

Completed Work Date: 10/01/2016

Section I - Coverages, Coverage A - Bodily Injury and Property Damage Liability, paragraph 2. Exclusions is amended to add the following:

This insurance does not apply to

Prior completed Operations

"Bodily Injury" or "Property Damage" resulting, directly or indirectly, and/or arising out of, in whole or in part, from "your work", which was completed prior to the inception date of this policy.

"Your Work" will be deemed completed at the earliest of the following times:

a. when all the work called for in your contract has been completed;
b. When all the work to be done at the job site has been completed if your contract calls for work at more than one job sites;
c. When a Certificate of Occupancy has been officially issued by a government authority,
d. When that part of the work done at a job site has been put to its intended use by any person or organization

Work that may need service, maintenance, correction, repair, or replacement on or after the inception date of this policy but is otherwise complete, will be deemed completed.

198. The Project was completed in 2019; however, some of the 52 buildings received Certificates of Occupancies prior to the dates listed in "Prior Completed Operations" endorsements.

199. Accordingly, the Policies do not provide coverage for damages to Kolter Entities' operations completed before November 1, 2006, and October 1, 2016, depending on the applicable policy.

200. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for damages that fall under the "Prior Completed Operations" exclusion

would promote the resolution of the Underlying Action.

201. Whether or not damage sought in the Underlying Action fall under the "Prior Completed Operations" exclusion is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for any such damage would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

202. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnity Kolter Entities under the Policies against claims made in the Underlying Action for damage to property arising from Kolter Entities' work that falls under the "Prior Completed Operations" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to defend Kolter Entities in the Underlying Action for any damage that would fall under the "Prior Completed Operations" exclusion.

**COUNT XVIII - NO DUTY TO INDEMNIFY UNDER "PRIOR COMPLETED OPERATIONS" EXCLUSION**

203. Paragraphs 1-29, and 34-42 above are here incorporated.

204. Kolter Entities seek indemnity from AmTrust Entities in connection with the Underlying Action.

205. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited to by exclusions in the Policies, including the "Prior Completed Operations" exclusion.

206. The United and 2018-2019 AmTrust DAC policies contains the following endorsement:

**PRIOR COMPLETED OPERATIONS EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

Completed Work Date: 11/01/2006

Section I - Coverages, Coverage A - Bodily Injury and Property Damage Liability, paragraph 2. Exclusions is amended to add the following:

This insurance does not apply to

Prior completed Operations

"Bodily Injury" or "Property Damage" resulting, directly or indirectly, and/or arising out of, in whole or in part, from "your work", which was completed prior to the inception date of this policy.

"Your Work" will be deemed completed at the earliest of the following times:

e. when all the work called for in your contract has been completed;
f. When all the work to be done at the job site has been completed if your contract calls for work at more than one job sites;
g. When a Certificate of Occupancy has been officially issued by a government authority,
h. When that part of the work done at a job site has been put to its intended use by any person or organization

Work that may need service, maintenance, correction, repair, or replacement on or after the inception date of this policy but is otherwise complete, will be deemed completed.

207. The 2019-2020 AmTrust policies contain the following endorsement:

**PRIOR COMPLETED OPERATIONS EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

Completed Work Date: 10/01/2016

Section I - Coverages, Coverage A - Bodily Injury and Property Damage Liability, paragraph 2. Exclusions is amended to add the following:

This insurance does not apply to

Prior completed Operations

"Bodily Injury" or "Property Damage" resulting, directly or indirectly, and/or arising out of, in whole or in part, from "your work", which was completed prior to the inception date of this policy.

"Your Work" will be deemed completed at the earliest of the following times:

e. when all the work called for in your contract has been completed;
f. When all the work to be done at the job site has been completed if your contract calls for work at more than one job sites;
g. When a Certificate of Occupancy has been officially issued by a government authority,
h. When that part of the work done at a job site has been put to its intended use by any person or organization

Work that may need service, maintenance, correction, repair, or replacement on or after the inception date of this policy but is otherwise complete, will be deemed completed.

208. The Project was completed in 2019; however, some of the 52 buildings received Certificates of Occupancies prior to the dates listed in "Prior Completed Operations" endorsements.

209. Accordingly, the Policies do not provide coverage for damages to Kolter Entities' operations completed before November 1, 2006, and October 1, 2016, depending on the applicable policy.

210. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damages that fall under the "Prior Completed Operations" exclusion would promote the resolution of the Underlying Action.

211. Whether or not damage sought in the Underlying Action fall under the "Prior Completed Operations" exclusion is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for any such damage would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

212. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnity Kolter Entities under the Policies against claims made in the Underlying Action for damage to property arising from Kolter Entities' work that falls under the "Prior Completed Operations" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage that would fall under the "Prior Completed Operations" exclusion.

**COUNT XIX – NO DUTY TO DEFEND UNDER "EXTERIOR INSULATION AND FINISH SYSTEMS" EXCLUSION**

213. Paragraphs 1-29, and 34-42 above are here incorporated.

214. The Policies contain an exclusion for "Exterior Insulation and Finish Systems" which states:

**EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or
2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

B. The following definition is added to the Definitions Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;
2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
3. A reinforced or unreinforced base coat;
4. A finish coat providing surface texture to which color may be added; and
5. Any flashing, caulking or sealant used with the system for any purpose.

215. The Complaints set forth claims against Kolter Entities for cost of repair of finish systems, stucco, flashing, caulking, and sealants.

216. Any repairs for property damage of any “exterior insulation and finish system” are not covered by the Policies.

217. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for damages that fall under the “Exterior Insulation and Finish Systems” exclusion would promote the resolution of the Underlying Action.

218. Whether or not damages sought in the Underlying Action are for property damage arising out of repairs or installation for “exterior insulation and finish systems,” or that would otherwise fall under the “Exterior Insulation and Finish Systems” exclusion, is not an issue that

will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities for any such damage would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

219. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities under the Policies against claims made in the Underlying Action for damage to property that fall into the "Exterior Insulation and Finish Systems" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to defend Kolter Entities in the Underlying Action for any damage that would fall under the "Exterior Insulation and Finish Systems" exclusion.

**COUNT XX – NO DUTY TO INDEMNIFY UNDER "EXTERIOR INSULATION AND FINISH SYSTEMS" EXCLUSION**

220. Paragraphs 1-29, and 34-42 above are here incorporated.

221. Kolter Entities seek indemnity from AmTrust Entities under the Policies for the Underlying Action.

222. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited to by exclusions in the Policies, including the "Exterior Insulation and Finish Systems" exclusion.

223. The Policies contains an exclusion for "Exterior Insulation and Finish Systems" which states:

**EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or
2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

B. The following definition is added to the Definitions Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;
2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
3. A reinforced or unreinforced base coat;
4. A finish coat providing surface texture to which color may be added; and
5. Any flashing, caulking or sealant used with the system for any purpose.

224. The Complaints set forth claims against Kolter Entities for cost of repair of finish systems, stucco, flashing, caulking, and sealants.

225. Any repairs for property damage of any “exterior insulation and finish system” are not covered by the Policies.

226. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damages that fall under the “Exterior Insulation and Finish Systems”

exclusion would promote the resolution of the Underlying Action.

227. Whether or not damages sought in the Underlying Action are for property damage arising out of repairs or installation for "exterior insulation and finish systems," or that would otherwise fall under the "Exterior Insulation and Finish Systems" exclusion, is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for any such damage would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

228. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities under the Policies against claims made in the Underlying Action for damage to property that fall into the "Exterior Insulation and Finish Systems" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage that would fall under the "Exterior Insulation and Finish Systems" exclusion.

**COUNT XXI – NO DUTY TO INDEMNIFY UNDER FUNGUS, MILDEW AND MOLD EXCLUSION**

229. Paragraphs 1-29, and 34-42 above are here incorporated.

230. Kolter Entities seek indemnity from AmTrust Entities in connection with the Underlying Action.

231. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust

Entities' duty to indemnify Kolter Entities, if any, are limited to by exclusions in the Policies, including the "Fungus, Mildew and Mold" exclusion.

232. The Policies contain varying versions of the exclusion.

233. The three United policies contain the following exclusion:

**FUNGUS, MILDEW AND MOLD EXCLUSION**

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Form**

This insurance does not apply to:

1. "Bodily injury", "property damage", medical payments, "personal and advertising injury" arising out of, resulting from, caused by, contributed to, or in any way related to the existence, inhalation or exposure to any "fungus/fungi" and or "spore(s)" ; or

2. Any cost or expenses associated in any way, or arising out of the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal, or any obligation to investigate or assess the presence or effects of any "fungus/fungi" or "spore(s)" ; or

3. Any obligation to share with or repay any person, organization or entity, related in any way to items **1.** and **2.** above,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage.

For purposes of this endorsement, the following definitions apply

"Fungus/fungi" includes, but is not limited to, any form or type of mold, mildew, mushroom, yeast, or biocontaminant

"Spore(s)" includes, but is not limited to, any substance produced by, emanating from, or arising out of any "fungus/fungi".

All other items and conditions of this Policy remain unchanged.

234. The policies issued in 2013-2014, 2014-2015, and 2018-2019 by AmTrust DAC include the following version of the "Fungus, Mildew, and Mold Exclusion," form no. GL 330204 (10-12):

**FUNGUS, MILDEW AND MOLD EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

1. "Bodily injury", "property damage", medical payments, "personal and advertising injury" arising out of, resulting from, caused by, contributed to, or in any way related to the existence, inhalation or exposure to any "fungus/fungi" and or "spore(s)" ; or

2. Any cost or expenses associated in any way, or arising out of the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal, or any obligation to investigate or assess the presence or effects of any "fungus/fungi" or "spore(s)" ; or

3. Any obligation to share with or repay any person, organization or entity, related in any way to items 1. and 2. above,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage.

For purposes of this endorsement, the following definitions apply

"Fungus/fungi" includes, but is not limited to, any form or type of mold, mildew, mushroom, yeast, or bio contaminant

"Spore(s)" includes, but is not limited to, any substance produced by, emanating from, or arising out of any "fungus/fungi".

All other items and conditions of this Policy remain unchanged.

235. The three policies effective from 2015-2016, 2016-2017, and 2017-2018 issued by AmTrust DAC contain a slightly different version of the exclusion, form no. CG 3131 (12-04), which states:

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverages – Bodily Injury And Property Damage Liability**:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following definition is added to the **Definitions** Section:
"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

236. The final policy, issued by Republic for 2019-2020, contains the following "Fungi or Bacteria Exclusion," form no. CG 21 67 12 04, which states:

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2. Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other

cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

237. The Complaints set forth claims against Kolter Entities for cost of repair based on water intrusion.

238. Any repairs for property damage which would not have occurred, in whole or in part, but due to exposure to fungus, mildew, or mold are not covered under the Policies.

239. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damages that fall under the Policies' various fungus, milder and mold exclusions = would promote the resolution of the Underlying Action.

240. Whether or not damage sought in the Underlying Action are for property damage due to exposure to fungus, mildew, or mold, or that would otherwise fall under the above-quoted exclusions, is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for any such damage would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

241. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities under the Policies against claims made in the Underlying Action for damage to property that fall into the fungus, mildew or mold exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage that would fall under the fungus, mildew, or mold exclusions.

**COUNT XXII - NO DUTY TO INDEMNIFY UNDER PROFESSIONAL LIABILITY EXCLUSION**

242. Paragraphs 1-29, and 34-42 above are here incorporated.

243. Kolter Entities seek indemnity from AmTrust Entities in connection with the Underlying Action.

244. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited to by exclusions in the Policies, including the "Contractors – Professional Liability" exclusion.

245. The Policies contain exclusions for professional liability, including engineering, architectural, and surveying services:

> **EXCLUSION – CONTRACTORS –PROFESSIONAL LIABILITY**
> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
>
> The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:
>
> 1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
>    a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
>    b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.
>
>    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.
> 2. Subject to Paragraph 3. below, professional services include:
>    a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
>    b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.
> 3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

246. The Complaints set forth allegations against the Kolter Entities for certain services that fall within the exclusion for "Contractors – Professional Liability," which are excluded under

the Policies.

247. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for damages that fall under the "Contractors – Professional Liability" exclusion would promote the resolution of the Underlying Action.

248. Whether or not damages sought in the Underlying Action fall under the "Contractors – Professional Liability" exclusion is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities for any such damage would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

249. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnity Kolter Entities under the Policies against claims made in the Underlying Action for damage to property arising from Kolter Entities' work that falls under the "Contractors – Professional Liability" exclusion.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action for any damage that would fall under the "Contractors – Professional Liability" exclusion.

**COUNT XXIII - NO DUTY TO DEFEND UNDER OTHER INSURANCE**

250. Paragraphs 1-29, and 34-42 above are here incorporated.

251. The Policies contain an "Other Insurance" provision, in Section IV – Commercial General Liability Conditions, which states:

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A or B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**
This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**
**(1)** This insurance is excess over:
**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:
**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability.
**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A or B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
**(b)** The total of all deductible and self insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to

apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

252.

253. The Complaints set forth allegations that Kolter Entities are vicariously liable for their subcontractors.

254. The Complaint attaches contracts with certain subcontractors, which contain provisions requiring the subcontractors to obtain insurance for work at the Project and include Kolter Entities as an additional insured.

255. Further, Kolter Signature, Heathrow, and Kolter Group all filed crossclaims for contractual indemnity over all the subcontractors that performed the work at the Project. The crossclaims attach subcontracts, which similarly require the subcontractors to include Kolter Entities as an additional insured on the subcontractors' policies.

256. A court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities because the Policies are excess over the primary policies of Kolter Entities' subcontractors would promote the resolution of the Underlying Action.

257. Whether or not the Policies act as excess over the subcontractors' primary polices, including AmTrust Entities' duty to defend based on same, is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to defend Kolter Entities in the Underlying Action until Kolter Entities' subcontractors' primary policies exhaust would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

258. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense obligations given the status of its Policies

as excess over the subcontractors' policies, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to defend Kolter Entities under the Policies against claims made in the Underlying Action.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to defend Kolter Entities in the Underlying Action at this time because the Policies are excess over the subcontractors' primary policies.

**COUNT XXIV - NO DUTY TO INDEMNIFY UNDER OTHER INSURANCE**

259. Paragraphs 1-29, and 34-42 above are here incorporated.

260. Kolter Entities seek indemnity from AmTrust Entities in connection with the Underlying Action.

261. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited to by terms and provisions in the Policies, including the "Other Insurance" provision.

262. The Policies contain an "Other Insurance" provision, in Section IV – Commercial General Liability Conditions, which states:

> **4. Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A or B** of this Coverage Part, our obligations are limited as follows:
>
> **a. Primary Insurance**
> This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.
>
> **b. Excess Insurance**
> **(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A or B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

263.

264. The Complaints set forth allegations that Kolter Entities are vicariously liable for their subcontractors.

265. The Complaint attaches contracts with certain subcontractors, which contain provisions requiring the subcontractors to obtain insurance for work at the Project and include Kolter Entities as an additional insured.

266. Further, Kolter Signature, Heathrow, and Kolter Group all filed crossclaims for contractual indemnity over all the subcontractors that performed the work at the Project. The crossclaims attach subcontracts, which similarly require the subcontractors to include Kolter Entities as an additional insured on the subcontractors' policies.

267. A court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities because the Policies are excess over the primary policies of Kolter Entities' subcontractors would promote the resolution of the Underlying Action.

268. Whether or not the Policies act as excess over the subcontractors' primary polices, including AmTrust Entities' duty to indemnify prior to the subcontractors' policies exhausting, is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to indemnify Kolter Entities in the Underlying Action until Kolter Entities' subcontractors' primary policies exhaust would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

269. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations given the status of their Policies as excess over the subcontractors' policies, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnify Kolter Entities under the Policies against claims made in the Underlying Action.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the Policies to indemnify Kolter Entities in the Underlying Action at this time because the Policies are excess over the subcontractors' primary policies.

**COUNT XXV - DECLARATORY JUDGMENT ACTION AS TO ANTI-STACKING PROVISIONS**

270. Paragraphs 1-29, and 34-42 above are here incorporated.

271. Kolter Entities seek indemnity from AmTrust Entities in connection with the Underlying Action.

272. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited to by terms and provisions in the Policies, including the anti-stacking endorsements, which limit the amount available under the last three policies.

273. The last three policies contain the following anti-stacking endorsement:

> The "Each Occurrence Limit" is the most we will pay regardless of the number of Commercial General Liability policies issued to the Insured by us which may apply to the same "occurrence."

274. A court order in this case declaring that, in the event that AmTrust Entities have a duty to defend and indemnify under one or more of the last three policies, the policies' anti-stacking provisions limit the amount available under the three policies, would promote the resolution of the Underlying Action.

275. Whether and how the anti-stacking provisions apply is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring that AmTrust Entities are not obligated to pay an amount in excess over the "Each Occurrence Limit" in the last three policies would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

276. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' indemnity obligations given the anti-stacking

provisions, including the potential amount recoverable under the policies, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities to indemnify Kolter Entities under the Policies against claims made in the Underlying Action.

WHEREFORE, AmTrust Entities request that this court find and declare that AmTrust Entities have no obligation under the anti-stacking endorsement to pay an amount in excess over the "Each Occurrence Limit" in the last three policies.

**COUNT XXVI – DECLARATORY JUDGMENT ACTION AS TO NUMBER OF "OCCURRENCE(S)"**

277. Paragraphs 1-42 above are here incorporated.

278. The Policies provide coverage for damages arising out of property damage caused by an "occurrence."

279. The Policies defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

280. The Policies contain limits for each "occurrence," with a corresponding "aggregate limit."

281. The Complaints allege several defects at the Project. Ex. A, ¶ 225, Ex. C, ¶ 225.

282. However, the Complaints allege, at most, one "occurrence" as it relates to the Kolter Entities for the defective construction and delivery of the Project.

283. Should the Court find that duties devolved upon AmTrust Entities under the Policies to defend Kolter Entities against the claims set forth in the Underlying Action, AmTrust Entities' duty to indemnify Kolter Entities, if any, are limited by the number of "occurrence(s)."

284. A court order in this case declaring the number of "occurrences" alleged in the Complaints, if any, would promote the resolution of the Underlying Action.

285. Whether or not there is an "occurrence" or multiple "occurrences" alleged in the Complaints is not an issue that will be litigated in the Underlying Action, and a court order in this case declaring the amount of "occurrences," if any, would serve to avoid or reduce the need for the court's continued involvement in the Underlying Action, and for the court's future involvement in subsequent post-judgment adjudications.

286. In view of the foregoing, an actual and present controversy exists between or among the parties as to the scope of AmTrust Entities' defense and indemnity obligations based on the amount of "occurrences," if any, and this court has the power to declare the rights and obligations, if any, of AmTrust Entities based on the amount of "occurrences," if any.

WHEREFORE, AmTrust Entities request that this court find and declare that, if the Complaints allege an "occurrence," the Complaints at most only allege one "occurrence," and AmTrust Entities obligations under the Policies are limited accordingly.

Dated: August 5, 2022

By: */s/ Seth V. Alhadeff*

SETH V. ALHADEFF
Florida Bar No.: 525235
seth.alhadeff@lewisbrisbois.com
RAVIKA RAMESHWAR
Florida Bar No.: 123659
ravika.rameshwar@lewisbrisbois.com
**Lewis Brisbois Bisgaard & Smith LLP**
*Counsel for Plaintiffs*
2 Alhambra Plaza, Suite 1110
Coral Gables, Florida 33134
Telephone: 786.353.0210
Facsimile: 786.513.2249